Page 1

```
         UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF NEW YORK
_____
                                  )
ESTATE OF JAMES OSCAR SMITH       )
and HEBREW HUSTLE INC.,           )
     Plaintiffs,                  )
                                  )
        -vs-                      ) No. 14 CV 2703 (WHP) (RLE)
                                  )
CASH MONEY RECORDS, INC., et      )
al.,                              )
     Defendants.                  )
                                  )
_____    )
AUBREY DRAKE GRAHAM,              )
     Counterclaim Plaintiff,      )
                                  )
        -vs-                      )
                                  )
HEBREW HUSTLE INC.,               )
     Counterclaim Defendant,      )
                                  )
        and                       )
                                  )
STEPHEN HACKER,                   )
     Additional Counterclaim      )
     Defendant.                   )
                                  )
_____    )
```

                HOMEWOOD SUITES
            1200 PENNBROOK PARKWAY
         LANSDALE, PENNSYLVANIA  19446
                APRIL 24, 2015
                  4:38 P.M.

              ORAL DEPOSITION OF
            ANITA MAE SMITH-JOHNSON


REPORTED BY:
DEBRA SAPIO LYONS, RDR, CRR, CCR, CPE
JOB NO. 92851

```
 1
 2
 3
 4
 5              April 24, 2015
 6         Oral deposition of ANITA MAE
 7   SMITH-JOHNSON, held at the Homewood Suites, 1200
 8   Pennbrook Parkway, Lansdale, Pennsylvania  19446,
 9   before Debra Sapio Lyons, a Registered Diplomat
10   Reporter, a Certified Realtime Reporter, a
11   Certified LiveNote Reporter, an Approved Reporter
12   of the United States District Court for the
13   Eastern District of Pennsylvania, a Certified
14   Court Reporter of the State of New Jersey, a
15   Notary Public of the States of New Jersey, New
16   York and the Commonwealth of Pennsylvania.
17
18
19
20
21
22
23
24
25
```

```
 1
 2   APPEARANCES:
 3           MOTTA & KRENTS
             BY:  ANTHONY MOTTA, ESQUIRE
 4           50 Broadway
             New York, New York  10004
 5           Counsel for Plaintiffs
 6
 7           MITCHELL SILBERBERG & KNUPP
 8           BY:  JEFFREY MOVIT, ESQUIRE
             12 East 49th Street
 9           New York, New York  10017
10           Counsel for Defendants EMI Music
11           Publishing Management, LLC;
             Warner/Chappell Music, Incorporated;
12           Sony/ATV Music Publishing, LLC;
             Aubrey Drake Graham and Amazon
13           Digital Services, Incorporated
14
             SHAPIRO ARATO & ISSERLES
15           BY:  CYNTHIA ARATO, ESQUIRE
             500 Fifth Avenue
16           New York, New York  10110
17           Counsel for Defendants Cash Money
18           records, Inc. And Universal
             Recording
19
20   ALSO PRESENT:
21
             RAYMOND E. JANIFER, SR.
22
23
24
25
```

1          Anita Mae Smith-Johnson
2          MR. MOVIT:  So the parties have
3     agreed that we're going to start
4     Ms. Johnson's deposition this afternoon.
5     We'll get as much done as we can before
6     Ms. Johnson needs to leave --
7          THE WITNESS:  Yes.
8          MR. MOVIT:  -- for religious reasons.
9     We -- if it's not finished today, we will
10    have it on another day.  We will reconvene
11    to finish it on a date that's convenient
12    for Ms. Johnson, for her lawyer and for us.
13         THE WITNESS:  That's beautiful.
14    Thank you.
15                  - - -
16         ANITA MAE SMITH-JOHNSON, having been
17    first duly sworn, was examined and
18    testified as follows:
19                  - - -
20         E X A M I N A T I O N
21                  - - -
22    BY MR. MOVIT:
23         Q.   Good afternoon, Ms. Johnson.
24         A.   Good afternoon.
25         Q.   My name is Jeff Movit.  We were

1        Anita Mae Smith-Johnson
2   the work that we just listened to, the Jimmy Smith
3   Rap?
4        A.   No.  We knew that that would be out
5   sometime or other as far as I knew.  And he -- he
6   didn't care if it didn't really because he didn't
7   like doing it to begin with.
8        Q.   He didn't like doing the Jimmy Smith
9   Rap?
10       A.   No.
11       Q.   Did someone ask him to do it, do you
12   know?
13       A.   Uh-huh.
14       Q.   Who asked him to?
15       A.   Of course.  I don't know who asked
16   him.
17       Q.   But it wasn't -- it wasn't his idea
18   to do the Jimmy Smith Rap?
19       A.   I don't know if it was his idea or
20   not.  I don't want to make statements that I
21   can't be sure of.  That's not my thing.
22       Q.   Right.  No, we only want you to
23   testify about what you know --
24       A.   Right.
25       Q.   -- and what you remember.

1          Anita Mae Smith-Johnson
2      A.   And that's all I'm going to do.
3      Q.   Ms. Johnson, is it fair to say that
4  you were not present when the Jimmy Smith Rap was
5  recorded?
6      A.   That I was not present?
7      Q.   You were not present --
8      A.   No.
9      Q.   -- when it was recorded?
10     A.   No, I was not present.
11         MR. MOVIT:  Our next exhibit will be
12     Exhibit F.
13         (Exhibit Defendant's F, two-page
14     letter from Conway & Associates, P.C.,
15     Certified Public Accountants dated July 30,
16     2009, was previously marked for
17     identification.)
18  BY MR. MOVIT:
19     Q.   If you would just please take a
20  moment to look at the document, Ms. Johnson.
21     A.   (The Witness Complies With the
22  Request of Counsel.)
23         PROFESSOR JANIFER:  Excuse me.  I'm
24     just going to step out to get a cell phone
25     wire.

1          Anita Mae Smith-Johnson
2   past royalties and future royalties" --
3        A.   Uh-huh.
4        Q.   -- "and also to assist in
5   challenging claims that are not proper."
6            Has Dr. Janifer been employed by the
7   Estate of Jimmy Smith?
8        A.   Yes.
9        Q.   Okay.  Do you recall when he was
10  first employed approximately?
11       A.   No, not by date, no, I don't even
12  want to say that.  I just started asking him to
13  help me and finally decided that I needed his
14  help on a basis that I could count on in a
15  continuous way.
16       Q.   Is there -- is there an -- is there
17  a written employment agreement for Dr. Janifer to
18  assist with the estate?
19       A.   Is there what?
20       Q.   A written employment agreement?
21       A.   Yes, we have an agreement.
22       Q.   Okay.
23            MR. MOVIT:  I ask, again, that that
24       be produced.
25            (Request for documents.)

1        Anita Mae Smith-Johnson
2     MR. MOTTA:  We'll take it under
3    advisement.
4  BY MR. MOVIT:
5     Q.  Do you recall -- Ms. Johnson, do you
6  recall the approximate date when that agreement is
7  signed?
8     A.  No.  Uh-uh.
9     Q.  Is --
10    A.  It was -- no.
11    Q.  Okay.  Is Dr. Janifer still employed
12 by the estate?
13    A.  Yes.
14    Q.  Okay.  What work -- what types of
15 work has Dr. Janifer done for the estate in
16 connection with his employment by the estate?
17    A.  He's responded to letters and
18 questions and spoke to people by telephone for me
19 with me sitting like I am with her.  They ask
20 questions, he asks me.  And I say -- ask him, you
21 know, and we -- we discuss it, make our decision.
22 And I tell him what I want him to do in reference
23 to that.
24    Q.  Okay.  Has Dr. Janifer been paid by
25 the estate for his work for the estate?

1          Anita Mae Smith-Johnson
2      a lawyer thing, but I move to strike as
3      non-responsive.
4          THE WITNESS:  Hum?
5          MS. ARATO:  She didn't answer the
6      question why.
7          THE WITNESS:  Oh.
8          MR. MOTTA:  Oh, well, she did answer
9      the question why 20 minutes ago when it was
10     asked then.
11  BY MR. MOVIT:
12     Q.  I'll ask it again.  Is there a
13  reason why you didn't sign Page 197 yourself,
14  ma'am?
15         MR. MOTTA:  Objection.  It's asked
16     and answered.
17     A.  I didn't say I was completely sure
18  that I didn't sign it.
19     Q.  Could you please look at Exhibit S,
20  please.
21     A.  S?
22     Q.  Yeah, you don't have it yet.
23     A.  No, uh-uh.
24     Q.  Ms. Johnson, you don't have it yet.
25         (Exhibit Defendant's S, multipage

Page 112

```
 1              Anita Mae Smith-Johnson
 2         document entitled Co-Publishing Agreement
 3         document, was previously marked for
 4         identification.)
 5              THE WITNESS:  (Reviewing document.)
 6    BY MR. MOVIT:
 7         Q.   Please let me know when you're done
 8    reviewing.
 9         A.   Uh-huh.
10              (Reviewing document.)
11              49 to 64?
12         Q.   Sorry.  What was your question?
13         A.   You want me to read from --
14         Q.   My -- my --
15         A.   -- 149 to 64?
16         Q.   Just to -- no, just -- my question
17    is just to the extent that you need to review it to
18    answer my question whether you've ever seen this
19    document before.  That's my question at the moment.
20         A.   I'm pretty sure I have, yes.
21         Q.   Okay.  If you would please look,
22    Ms. Johnson, at Page 161.
23         A.   Uh-huh.
24         Q.   You see there's two signatures on
25    this page?
```

Page 113

1         Anita Mae Smith-Johnson
2         A.   Uh-huh.
3         Q.   The second signature --
4         A.   Uh-huh.
5         Q.   -- do you know who physically signed
6    this document?
7         A.   I did at that time.
8         Q.   Okay.
9         A.   Uh-huh.
10        Q.   And Page 163, if you'd look at it.
11        A.   I think he did that one.  I'm not
12   sure.
13        Q.   Okay.  Did there come a time where
14   someone asked you to personally sign the contract
15   with Hebrew Hustle as opposed to having your son
16   sign it?
17        A.   No, no one has asked me.  They asked
18   me does he have the -- does he have my
19   permission.  That's what people ask me:  Does he
20   have permission to sign the paper that you're
21   going to send back or the paper that you sent
22   back?
23             And it has only been because
24   sometimes I write in cursive and sometimes I do
25   almost a half write, half print.

Case 1:14-cv-02703-WHP   Document 94-3   Filed 10/20/15   Page 12 of 17

```
            UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF NEW YORK
                    -   -   -

ESTATE OF JAMES OSCAR SMITH:
and HEBREW HUSTLE, INC.         :
    Plaintiffs,                 :
                                :
        vs.                     :
                                :
CASH MONEY RECORDS, INC.,       :
et al.,                         :
    Defendants.                 :
AUBREY DRAKE GRAHAM,            :
    Counterclaim Plaintiff,     :
                                :
        vs.                     :
                                :
HEBREW HUSTLE INC.,             :
    Counterclaim Defendant,     :
and STEPHEN HACKER,             :
    Additional Counterclaim     : No. 14 CV 2703
    Defendant.                  : (WHP)(RLE)
                    -   -   -
                June 26, 2015
                    -   -   -
                   VOLUME II

    Oral deposition of ANITA JOHNSON taken
pursuant to notice, held at 1737 Sumneytown
Pike, Lansdale, Pennsylvania 19446, commencing
at 10:13 a.m., on the above date, before
Jennifer P. Miller, RPR, CCR, CRR, and Notary
Public for the Commonwealth of Pennsylvania. Job No: 95025
```

```
 1
 2    A P P E A R A N C E S:
 3    MOTTA & KRENTS
 4    ANTHONY MOTTA, ESQUIRE
 5    50 Broadway
 6    New York, NY 10004
 7    Counsel for Plaintiffs
 8
 9    MITCHELL SILBERBERG & KNUPP
10    JEFFREY MOVIT, ESQUIRE
11    12 East 49th Street
12    New York, NY 10017
13    Counsel for Defendants, EMI Music Publishing
14    Management, LLC; Warner/Chappell Music,
15    Incorporated; Sony/ATV Music Publishing, LLC;
16    Aubrey Drake Graham and Amazon Digital
17    Services, Incorporated
18
19    SHAPIRO ARATO & ISSERLES
20    CYNTHIA ARATO, ESQUIRE
21    500 Fifth Avenue
22    New York, NY 10110
23    Counsel for Defendants, Cash Money Records,
24    Inc. and Universal Recording
25    ALSO PRESENT:  Raymond E. Janifer, Sr.
```

1                    ANITA JOHNSON

2                        -  -  -

3              P R O C E E D I N G S

4                        -  -  -

5              (It is hereby stipulated

6        and agreed by and among counsel that

7        reading, signing, sealing, filing and

8        certification are not waived; and that

9        all objections, except as to the form

10       of the questions, be reserved until the

11       time of trial.)

12                       -  -  -

13                  ANITA JOHNSON,

14       after having been first duly sworn, was

15       examined and testified as follows:

16                       -  -  -

17               E X A M I N A T I O N

18                       -  -  -

19   BY MR. MOVIT:

20        Q.    Good morning, Ms. Johnson.

21        A.    Good morning.

22        Q.    Thank you for coming in today.

23        A.    Uh-hum.

24        Q.    So today we're going to continue

25   your deposition.  Before I get started, I just

1          ANITA JOHNSON
2   money that's sent to the estate?
3       A.   No.  I do that, I handle all the
4   checks and cash that come in.
5       MR. MOVIT:  Okay.  I'm just going to
6   confer with Ms. Arato off the record.  I
7   may not have any more questions.
8              -  -  -
9          (Whereupon, a short recess
10  was taken.)
11             -  -  -
12  BY MR. MOVIT:
13      Q.   Okay.  My next question,
14  Ms. Johnson, has nothing to do with the
15  documents in front of you.
16      A.   Oh, okay.
17      Q.   And, again, please don't speculate.
18      A.   Uh-hum.
19      Q.   I just want to know what you know or
20  don't know.
21      A.   Right.
22      Q.   Ms. Johnson, do you have any
23  knowledge of how the Jimmy Smith Rap was
24  created?
25      A.   I think one of the guys that already

1                    ANITA JOHNSON

2    tried to play with him before with their type

3    of music, which he didn't like, so I don't

4    know how they finally got together.  Somehow

5    they had been at jazz sessions or something.

6    I'm not really sure.

7                    So, no, let me say that.  I'm

8    not going to speculate.

9              MR. MOVIT:  Okay.  Unless Mr. Motta

10        has any cross, I reserve the right to

11        redirect, and I'm going to hold the

12        deposition open in case there's any

13        subsequently produced relevant documents.

14            But other than that, I'm done.

15        Thank you very much for your time.

16            THE WITNESS:  You're very welcome.

17                      -   -   -

18              E X A M I N A T I O N

19                      -   -   -

20   BY MR. MOTTA:

21       Q.   Ms. Johnson, have you ever sent any

22   text messages from your phone?

23       A.   No, I have attempted to, but no.

24       Q.   But you receive text messages on

25   your phone?