# EXHIBIT 2



## LICENSE AGREEMENT

THIS AGREEMENT is made as of the 27th day of September 2013, effective as of the date set forth in Paragraph 2 below, by and between Cash Money Records, Inc., 1755 E. 149th Street, Miami, FL 33181 ("Licensee") and Rhino Entertainment Company, A Warner Music Group Company ("Licensor"), 3400 West Olive Avenue, Burbank, CA 91505-4614.

1. Reference is made to the sound recording identified in Item 1 of Exhibit "A" as the "Sampled Master" performed by the artist identified in Item 1 of Exhibit "A" (hereinafter, the "Recording"). A portion of the Recording (the "Sample") is contained in Licensee's sound recording, identified in Item 2 of Exhibit "A" as performed by Licensee's artist identified in Item 2 of Exhibit "A" and referred to below as the "Derivative Master".

2. Licensor hereby grants to Licensee and its designee as identified in Item 9 of Exhibit "A" the non-exclusive perpetual license and right commencing on September 24, 2013 (the "Term"):

    (a) To embody the Sample in and as part of the Derivative Master.

    (b) To reproduce, distribute (through all methods of distribution, excluding premiums) and otherwise exploit the Sample, as permitted by this Agreement throughout the territory (the "Territory") as identified in Item 3 of Exhibit "A" in the formats and configurations identified in Item 4 of Exhibit "A" (the "Permitted Records").

    (c) To license to third parties the Sample as embodied in the Derivative Master for compilation phonorecords in audio-only formats and configurations (the "Compilation Album") provided that Licensee notifies Licensor in writing immediately upon release of each such Compilation Album, including the title of the Compilation Album, the Album's release date and the territory in which the Compilation Album is to be distributed. It is agreed and understood that Licensee shall pay Licensor or cause to be paid to Licensor the royalty rate set forth in Item 6 of Exhibit "A" for each Compilation Album embodying the Derivative Master sold or otherwise distributed less actual returns.

3. Licensor shall have the right to approve those portions of the Recording which are embodied in the Derivative Master, and any edited versions thereof now or hereafter created. Licensee shall not have the right to further edit, alter or adapt the Recording without Licensor's consent and approval. Notwithstanding the foregoing, Licensee shall have the right to edit or remix the Derivative Master, provided that such edit or remix shall not affect the Recording in any way; that the use of the Recording is not more often, greater, more prominent, more conspicuous; that the Recording is not altered in any way other than as presently embodied in the Derivative Master as hereinabove approved.

4. Simultaneously with the execution hereof or upon the initial release of the Derivative Master (either commercially or promotionally), whichever occurs first, Licensee shall pay Licensor a non-returnable advance (the "Advance") against royalties in the amount specified in Item 5 of Exhibit "A". For each Permitted Record embodying the Derivative Master, sold or otherwise distributed less actual returns, Licensee shall pay Licensor a royalty (the "Royalty") in the amount specified in Item 6 of Exhibit "A". The Royalty applicable to the exploitation of the Derivative Master as a stream (whether via a subscription service or otherwise) shall be equal to Fifteen Percent (15%) of the share of receipts due to Licensee's artist. Said payments to Licensor pursuant to this paragraph shall include all royalties due to Licensor's Artist and the producer which shall be the sole responsibility of and payable by Licensor (other than those sums which Licensee is specifically required to pay hereunder, including

Case 1:14-cv-02703-WHP   Document 100-1   Filed 10/20/15   Page 3 of 5



CONFIDENTIAL

without limitation any union payments) in connection with Licensee's use of the Sample as authorized herein, provided, however, that in no event shall Licensor's liability as hereafter limited be increased.

5. Payment of any amounts due in addition to the advances and fees hereunder shall be made semi-annually within ninety (90) days following the end of each semi-annual period. Each payment shall be accompanied by statements setting forth in detail the computation of the amount thereof.

6. Licensor shall have the right at any time within two (2) years after a statement or account is received to inspect and make extracts of Licensee's books and records, and the books and records of Licensee's subsidiaries and affiliates, insofar as said books and records pertain to the subject matter of this Agreement. Such inspection shall be made by a Certified Public Accountant upon Licensee's receipt of reasonable written notice during normal business hours and shall not be conducted more than once per year and only once with respect to any one statement.

7. If Licensee fails to account and make payments hereunder and such failure is not cured within thirty (30) days after Licensee's receipt of written notice thereof or if Licensee fails to perform any other obligations required of Licensee hereunder and such failure is not cured within thirty (30) days after Licensee's receipt of written notice thereof or in the event that Licensee shall file or have filed against Licensee a petition in bankruptcy or shall take the benefit of any law relating to the relief of debtors then, and in any of such events Licensor in addition to such other rights or remedies which Licensor has at law or otherwise have under this Agreement, may elect to terminate this Agreement without prejudice to any rights or claims it may have and all rights granted hereunder shall terminate and Licensee may not thereafter manufacture records embodying the Derivative Master.

8. Licensee agrees to accord Licensor credit in substantially the form as identified in Item 8 of Exhibit "A" on the label and sleeve of all Permitted Records embodying the Sample.

9. As soon as available, Licensee shall supply Licensor with not less than two (2) copies of the Derivative Master in compact disc form.

10. Licensee warrants, represents and agrees that it will obtain in writing all requisite consents and permissions of labor organizations and the copyright owners of the musical compositions embodied in the Recording and that Licensee will pay all re-use payments, fees, royalties and other sums required to be paid for such consents and permissions, under applicable collective bargaining agreements, or otherwise in connection with Licensee's use of the Recording, and that Licensee's use of the Recording other than with respect to the rights herein granted shall not violate the rights of any third party.

11. Licensor represents and warrants that it possesses the full right, power and authority to enter into and to perform this Agreement. Licensor will indemnify and hold Licensee harmless against any and all claims, liabilities, losses, damages or expenses actually incurred by Licensee by reason of Licensor's breach of said warranty but Licensor's aggregate liability to Licensee shall be limited to the amount of the royalties actually paid by Licensee to Licensor hereunder.

12. Licensee will indemnify and hold Licensor harmless from any and all claims, liabilities, losses, damages and expenses, including but not limited to attorney's fees and legal expenses arising from any breach or alleged breach of Licensee's warranties, representations or covenants under this Agreement, or in any way resulting from or connected with Licensee's use of the Recording, provided the claim has been settled or has resulted in a final non-appealable judgment against Licensee or Licensor.

Cash Money Records, Inc./"Pound Cake/Paris Morton Music 2"
LA #31929 // ES – REV



13. It is hereby acknowledged that pursuant to a side letter agreement to the AFM Phonograph Record Labor Agreement, the amount required to be paid to the Phonograph Record Manufacturers' Special Payments Fund in connection with Licensee's use of a recording, produced under the AFM Phonograph Record Labor Agreement in a derivative master, has for the time being been determined to be the following ("AFM Fees", also restated in Item 7 of Exhibit "A"), such monies to be paid directly to Licensor:

    (a) Four Hundred Dollars ($400.00) for the first sample of the Recording used;
    (b) Two Hundred Fifty Dollars ($250.00) for the second and any subsequent samples of the Recording used; and
    (c) An amount equal to Two Percent (2%) of the gross revenues received by Licensor from Licensee for use of the Recording in the Derivative Master if such gross revenue exceeds Twenty-Five Thousand Dollars ($25,000.00), less the amount required to be paid under (a) and (b) above.

14. Licensee warrants, represents, covenants and agrees that it shall separately obtain the right to reproduce in and as part of the Derivative Master all "sampled" material contained in the Recording.

15. Nothing contained in this Agreement will obligate Licensee to utilize the Sample in any version of the Derivative Master.

16. The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision. This Agreement contains the entire understanding of the parties hereto relating to the subject matter hereof. Handwritten changes shall not be legally binding unless initialed by both parties. A waiver by either party of any term or condition of this Agreement in any instance will not be deemed or construed as a waiver of such term or condition for all instances, past or future.

17. Licensee may assign this Agreement to any party provided that such assignee agrees in writing to be bound by and to comply with all of the terms and conditions of this Agreement.

18. The validity, construction and effect of this Agreement, and any and all modifications thereof, shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York.

RHINO ENTERTAINMENT COMPANY,
A WARNER MUSIC GROUP COMPANY    CASH MONEY RECORDS, INC.

By: _____    By: _____
    An authorized signatory                              An authorized signatory

 CONFIDENTIAL

## EXHIBIT "A"

Annexed to the Agreement dated September 27, 2013 between Cash Money Records, Inc., and Rhino Entertainment Company, A Warner Music Group Company:

1. Sampled Master: "Jimmy Smith Rap" performed by Jimmy Smith

2. Derivative Master: "Pound Cake/Paris Morton Music 2" performed by Drake

3. Territory: World

4. Permitted Records: All audio-only phonorecord formats and configurations. Included with the rights granted is Licensee's right to cause or authorize the distribution of the Sampled Master in and as part of the promotional music video of the Derivative Master on audiovisual devices consisting only of videotape cassettes and video discs and on the internet (limited to "streaming" only) provided such distribution will embody the Derivative Master substantially as generally released and such distribution is for promotional use only.

    "Streaming" shall mean to perform publicly the promotional music video of the Derivative Master by means of an internet transmission that is substantially contemporaneous with the audible rendering of the Derivative Master on personal computers using a technology that is not designed to result in a reproduction of the Derivative Master on any such personal computer or any other device, other than a transitory reproduction required to render such contemporaneous performance (e.g., a data buffer).

5. Advance: Fifteen Thousand Dollars ($15,000.00)

6. Royalty: Three Cents ($0.03) per unit

7. AFM Fees:
    (a) Four Hundred Dollars ($400.00) for the first sample of the Recording used;
    (b) Two Hundred Fifty Dollars ($250.00) for the second and any subsequent samples of the Recording used; and
    (c) An amount equal to Two Percent (2%) of the gross revenues received by Licensor from Licensee for use of the Recording in the Derivative Master if such gross revenue exceeds Twenty-Five Thousand Dollars ($25,000.00), less the amount required to be paid under (a) and (b) above.

8. Credit:

    Featuring samples from the Jimmy Smith recording "Jimmy Smith Rap"
    Produced under license from Atlantic Recording Corp.
    By arrangement with Rhino Entertainment Company, a Warner Music Group Company

9. Designee/Distributor: Cash Money Records, Inc.

10. Miscellaneous Provisions: N/A