UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESTATE OF JAMES OSCAR SMITH and HEBREW HUSTLE INC., <br><br> Plaintiffs, <br><br> v. <br><br> CASH MONEY RECORDS, INC., *et al.*, <br><br> Defendants. | Case No. 14 CV 2703 (WHP) (RLE) |
| AUBREY DRAKE GRAHAM, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> HEBREW HUSTLE INC., <br><br> Counterclaim Defendant, <br><br> and <br><br> STEPHEN HACKER, <br><br> Additional Counterclaim Defendant. | |

**COUNTERCLAIM PLAINTIFF AUBREY DRAKE GRAHAM'S REPLY TO COUNTERCLAIM DEFENDANTS' STATEMENT OF ADDITIONAL FACTS**

Counterclaim Plaintiff Aubrey Drake Graham ("Graham" or "Counterclaim Plaintiff") respectfully submits this reply to Counterclaim Defendants Hebrew Hustle Inc.'s ("Hebrew Hustle) and Stephen Hacker's ("Hacker", collectively the "Counterclaim Defendants") statement of additional facts (Dkt. 192).

### Counterclaim Defendants' Statement of Additional Facts and Counterclaim Plaintiff's Replies Thereto

1. Hacker set up the website of Hebrew Hustle at www.hebrewhustle.com (the "Website"). (Hacker Dec. ¶ 2). At the time the Counterclaims were filed, the Website was divided into separate pages for "Home", "Bio", "About", "Clients" and "Contact". (Hacker Dec. ¶ 3).

> **COUNTERCLAIM PLAINTIFF'S REPLY**: Not disputed solely for purposes of summary judgment.

2. There are links to each separate section at the top of each webpage requiring someone visiting the Website to doubleclick the link to access the page. (Hacker Dec. ¶ 3). Each webpage is described below:

   a. The "Bio" page contains Hacker's photograph and a three paragraph description of his educational and business background. (Hacker Dec. ¶ 3, Exhibit D).

   b. The "About" page contains a two sentence description of the business of Hebrew Hustle. (Hacker Dec. ¶ 3, Exhibit E).

   c. The "Clients" page contains photographs with the performance names of songwriters, artists, and producers represented by Hebrew Hustle. (Hacker Dec. ¶ 3, Exhibit F).

   d. The "Contact" page permits a visitor to seek contact with Hebrew Hustle by providing his/her name, e-mail address, subject of contact, and a message. (Hacker Dec. ¶ 3, Exhibit G).

>**COUNTERCLAIM PLAINTIFF'S REPLY**:  Not disputed solely for purposes of summary judgment.

3. A photograph of the Counterclaim-Plaintiff, Aubrey Drake Graham ("Drake") appeared on the "Home" page (the "Photograph"). (Hacker Dec. ¶ 4).  A true copy of the Photograph is attached to the Hacker Declaration as Exhibit H. (Id).

>**COUNTERCLAIM PLAINTIFF'S REPLY**:  Not disputed solely for purposes of summary judgment.

4. A true copy of the "Home" page as it existed on July 25, 2014, which depicted the Photograph is attached to the Hacker Declaration as Exhibit I. (Id).

>**COUNTERCLAIM PLAINTIFF'S REPLY**:  Disputed.  The document attached to the Hacker Declaration as Exhibit I is in black and white, while the Website's "Home" page containing Graham's photographic image was in full color.  *See* "Exhibit A" to the parties' Joint Statement of Undisputed Facts (Dkt. 187).

5. There is no photograph or depiction of Drake anywhere else on the Website. (Hacker Dec. ¶ 4).

>**COUNTERCLAIM PLAINTIFF'S REPLY**:  Disputed.  There is no date associated with the above statement, and Counterclaim Defendants have admittedly spoliated earlier versions of the Website.  *See* Declaration of Stephen Hacker (Dkt. 190), ¶ 9.  Moreover, to the extent the undefined term "depiction"

encompasses Graham's name, it is undisputed that his name previously was separately featured on the Website. Rule 56.1 Joint Statement of Undisputed Facts (Dkt. 187), ¶ 4.

6. A person viewing the "Home" page on a computer screen would be required to scroll down the page to view the Photograph. The trademark of Hebrew Hustle is not visible when viewing the Photograph, either in hard copy or when viewing the "Home" page on a computer screen. (Hacker Dec. ¶ 5, Exhibit I). The Photograph was one of forty (40) photographs posted on the "Home" page depicting fifty-one (51) individuals. (Id).

> **COUNTERCLAIM PLAINTIFF'S REPLY**: Disputed. Counterclaim Defendants have failed to preserve any electronic version of the Website's "Home" page featuring Graham's image. Accordingly, it is impossible to determine whether a user of the Website "would be required to scroll down the page to view the Photograph." Additionally, there are far fewer than 40 photographs and 51 individuals in the copy of the Website's "Home" that is annexed as "Exhibit A" to the parties' Joint Statement of Undisputed Facts (Dkt. 187).

7. In the Photograph Drake's head and shoulders takes up less than one-third of the left side of the Photograph, he is wearing sunglasses, with only one of his arms and hands visible. In the Photograph Drake is making an obscene gesture colloquially referred to as "flipping the bird". (Hacker Dec. ¶ 6, See Exhibit H).

>**COUNTERCLAIM PLAINTIFF'S REPLY**: The first sentence of Paragraph 7 is not disputed solely for purposes of summary judgment; but it is irrelevant to the adjudication of this motion. The second sentence is disputed, as it constitutes an inflammatory and misleading description of a commonplace gesture. It is also irrelevant to the adjudication of this motion.

8. Drake is not identified by caption or otherwise on the "Home" page where the Photograph is depicted. (Id).

>**COUNTERCLAIM PLAINTIFF'S REPLY**: Not disputed solely with respect to the copy of the Website's "Home" that is annexed as "Exhibit A" to the parties' Joint Statement of Undisputed Facts (Dkt. 187)., and solely for purposes of summary judgment.

9. Individuals in the photographs on the "Home" page were either persons who Hebrew Hustle represented, or performers for whom individuals represented by Hebrew Hustle were either a songwriter or producer. (Hacker Dec. ¶ 7).

>**COUNTERCLAIM PLAINTIFF'S REPLY**: Disputed. Counterclaim Defendants have failed to proffer any admissible, non-conclusory evidence that "individuals represented by Hebrew Hustle were either a songwriter or producer" for Graham. Counterclaim Defendants have also failed to proffer any admissible, non-conclusory evidence that all of the individuals depicted in all of the photographs in any version of the Website "were either persons who Hebrew

9757195.3

4

Hustle represented, or performers for whom individuals represented by Hebrew Hustle were either a songwriter or producer."

10. There was one reference on the "Bio" page to the name of Drake as follows: "Stephen has played a heavy hand with his clients in the creation of hit songs for the likes of Eminem, Jay-Z, Kanye West, Lil' Wayne, Drake, Nicki Minaj and others."  (Hacker Dec. ¶ 8).

> **COUNTERCLAIM PLAINTIFF'S REPLY**:  Disputed.  As discussed in Graham's accompanying Memorandum of Law, Counterclaim Defendants spoliated the version of the Website which purportedly contained the above-quoted text (the "Alleged Sentence").   Accordingly, Plaintiffs are entitled to an adverse inference that the Alleged Sentence was not contained on the Website.

11. Attached as Exhibit J is an archive copy of the "Bio" page as it existed on and prior to July 25, 2014.  (Hacker Dec. ¶ 8).  Hacker designed and set up the Website and made all changes to the Website using the program WordPress.   (Hacker Dec. ¶ 2)   Hacker obtained a copy of Exhibit J through WordPress. (Hacker Dec. ¶ 8). WordPress has an editing program which maintains the history of the Website and shows changes made to it. (Id). It maintains a log of revisions showing the changes and the date of the changes made to the Website.  (Id). Hacker obtained Exhibit J by accessing the WordPress log and printing out the prior versions of the "Bio" webpage. (Id).

> **COUNTERCLAIM PLAINTIFF'S REPLY**:  The second sentence of Paragraph 11 is not disputed solely for purposes of summary judgment.  The remaining sentences of Paragraph 11 are disputed as they constitute an improper

and insufficient attempt by Counterclaim Defendants to circumvent the implications of their spoliation of the version of the Website which purportedly contained the Alleged Sentence by annexing a purported archived draft of the Alleged Sentence. This purported archived draft contained in Exhibit J does not demonstrate whether the Alleged Sentence was ever posted to the Website, when it was posted, when it was removed, or even if the draft language is for the Website at issue and not another, entirely unrelated Website. Additionally, the statements in Paragraph 11 are solely premised upon the assertions of Stephen Hacker, and there is no foundation that Hacker has personal knowledge, let alone expertise, regarding how the WordPress program functions.

12. Hacker removed the Photograph and the reference to Drake's name on July 25, 2014 the day Drake's attorney first claimed that they should not be on the Website. (Hacker Dec. ¶ 9).

**COUNTERCLAIM PLAINTIFF'S REPLY**: Not disputed solely for purposes of summary judgment; but it is irrelevant to the adjudication of this motion.

13. Neither Hebrew Hustle, nor Hacker, nor their attorney, received any prior demand that the Photograph be removed, or any complaint about the Photograph, or any notification whatsoever concerning the Photograph. (Motta Dec. ¶ 2; Hacker Dec. ¶ 10).

**COUNTERCLAIM PLAINTIFF'S REPLY**: Not disputed solely for purposes of summary judgment and solely to the extent that Paragraph 13 pertains to events occurring prior to July 25, 2014; but it is irrelevant to the adjudication of this motion.

14. Neither Hacker nor Hebrew Hustle have ever received any telephone calls, e-mails or other communications from a third party concerning either the reference to Drake's name on the Website or the Photograph. (Hacker Dec. ¶ 11).

> **COUNTERCLAIM PLAINTIFF'S REPLY**: Not disputed solely for purposes of summary judgment; but it is irrelevant to the adjudication of this motion.

15. Attached as Exhibit K is an interview of Drake by Marlow Stern taken from The Daily Beast dated November 15, 2011. (Hacker Dec. ¶ 12). Hacker downloaded and printed the article from the website of The Daily Beast, at https://www.thedailybeast.com/drake-on-take-care-rihanna-chris-brown-fight-acting-and-more. Exhibit K is a true and accurate depiction of what was downloaded by Hacker. (Id).

> **COUNTERCLAIM PLAINTIFF'S REPLY**: Not disputed solely for purposes summary judgment; but it is irrelevant to the adjudication of this motion. The contents of this 2011 article annexed as Exhibit K are hearsay and have no bearing on the issue of Graham's domicile as of the year 2014.

16. As permitted by Local Rule 26.1 (a) Counterclaim-Defendants' attorney served a Demand seeking a "verified statement setting forth [Drake's] residence(s) and domicile addresses, and any state or other jurisdiction of which is a citizen." (Motta Dec. ¶ 3). Drake in response served a "verified" response stating "the information sought by the Demand has no relevance" but that "Respondent is a resident and domiciliary of the State of California. Respondent is a citizen of the United States and Canada" (the "Statement"). (Id. A true copy of

9757195.3

the Statement is attached to the Motta Declaration as Exhibit L).  No further information was provided.  (Motta Dec. ¶ 3).

> **COUNTERCLAIM PLAINTIFF'S REPLY**:  Counterclaim Plaintiff does not dispute that Counterclaim Defendants served a demand pursuant to Rule 26.1(a). Counterclaim Plaintiff also does not dispute that Graham served a timely response to that demand, a copy of which is annexed as Ex. B to the Joint Statement of Undisputed Facts (Dkt. 187) (the "Rule 26.1 Response").  Counterclaim Plaintiff disputes the remaining assertions in Paragraph 16 on the ground that they contain fragmentary and incomplete quotations from the Rule 26.1 Response.

17. Counterclaim-Defendants' attorney by request dated July 13, 2017 sought the production of documents concerning Drake's residences in the United States and Canada from April 16, 2014, the date the Complaint was filed, to date.  (Motta Dec. ¶ 4).  A true copy of the request is attached to the Motta Declaration as Exhibit M.  (Id).  (Exhibit M).  Drake stated in response that the documents sought were "irrelevant to the Counterclaims at issue in this matter." True copies of the relevant pages of the Response are attached to the Motta Declaration as Exhibit N.  (Motta Dec. ¶ 4). Drake failed to produce any documents concerning his residences either in the United States or Canada. (Id).

> **COUNTERCLAIM PLAINTIFF'S REPLY:**  Disputed.  As set forth in Paragraphs 3-5 of the accompanying Declaration of Jeffrey Movit dated February 2, 2018, Graham did not "fail" to produce documents concerning his residences. Rather, Graham properly objected to Counterclaim Defendants' document demands as overly broad and overreaching, given they were unnecessarily

burdensome and harassing in seeking, *inter alia*, "[a]ll documents concerning Drake's residences in the United States from April 16, 2014 to date." *See* Motta Decl, Ex. M.  During the course of the parties' meet-and-confer communications, counsel for Graham raised the overly broad nature of these document demands.  Prior to a resolution of the parties' disagreement regarding the scope of Counterclaim Defendants' document demands, Counterclaim Defendants made a strategic decision to waive their right to seek further documents or other fact discovery in exchange for the parties' agreement to stipulate to a Joint Statement of Undisputed Facts.

18. By second request dated September 1, 2017 Counterclaim-Defendants sought documents concerning Drake's domiciliary intent and residence in California.  (Motta Dec. ¶ 5).  A true copy of the request is attached to the Motta Declaration as Exhibit O.  (Id).  Drake stated in his response to each request in the second notice that the documents were "irrelevant to the Counterclaims at issue in matter" (A copy of the Response is attached to the Motta Declaration as Exhibit P).  (Id).  Additionally, he stated: "Graham also objects because he has already submitted a verified statement that he is a domiciliary of California.  Any further discovery on this subject is unnecessary and harassing."  (See Exhibit P).  Drake failed to produce any documents responsive to the Second Request for the Production of Documents. (Motta Dec. ¶ 5).

> **COUNTERCLAIM PLAINTIFF'S REPLY:** Disputed.  As set forth in Paragraphs 3-5 of the accompanying Declaration of Jeffrey Movit dated February 2, 2018, Graham did not "fail" to produce documents responsive to the Second Request for Production of Documents.  Rather, Graham properly objected to

9

Counterclaim Defendants' document demands as overly broad and overreaching, given they sought such unnecessary and highly sensitive materials such as all of his 2014 tax returns and "all documents concerning" any of Graham's credit cards during the first half of 2014.  *See* Motta Decl., Ex. P. During the course of the parties' meet-and-confer communications, counsel for Graham raised the overly broad nature of these document demands.  Prior to a resolution of the parties' disagreement regarding the scope of Counterclaim Defendants' document demands, Counterclaim Defendants made a strategic decision to waive their right to seek further documents or other fact discovery in exchange for the parties' agreement to stipulate to a Joint Statement of Undisputed Facts.

DATED:	February 2, 2018	MITCHELL SILBERBERG & KNUPP LLP
New York, New York

By:	/s/ Christine Lepera

Christine Lepera (*ctl@msk.com*)
Jeffrey M. Movit  (*jmm@msk.com*)
12 East 49th Street, 30th Floor
New York, New York 10017-1028
Tel.: (212) 509-3900
Fax: (212) 509-7239

*Attorneys for Counterclaim Plaintiff Aubrey Drake Graham*

9757195.3