UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESTATE OF JAMES OSCAR SMITH and HEBREW HUSTLE INC., <br><br> Plaintiffs, <br><br> v. <br><br> CASH MONEY RECORDS, INC., *et al.*, <br><br> Defendants. | Case No. 14 CV 2703 (WHP) (RLE) |
| AUBREY DRAKE GRAHAM, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> HEBREW HUSTLE INC., <br><br> Counterclaim Defendant, <br><br> and <br><br> STEPHEN HACKER, <br><br> Additional Counterclaim Defendant. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
COUNTERCLAIM PLAINTIFF AUBREY DRAKE GRAHAM'S MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.      Counterclaim Defendants' Domicile Arguments Fail to Raise an Issue of Fact ............... 2

      A.      The Evidence Is Undisputed That Graham Is a California Domiciliary................. 2

      B.      There Is No Basis to Prevent Graham from Establishing His Domicile................ 3

      C.      The Assertions in the Tyler Declaration Are Made on Personal Knowledge ........ 5

II.     Counterclaim Defendants Cannot Dispute That Graham Is Entitled to Summary
      Judgment as to Liability on His Right of Publicity Counterclaims .................................... 5

      A.      No Issues of Fact or Law Preclude the Entry of Summary Judgment in
            Graham's Favor on His Common Law Right of Publicity Counterclaim ............. 6

            1.      Counterclaim Defendants Undisputedly Used Graham's Name and
                Image to Their Commercial Advantage..................................................... 6

            2.      Counterclaim Defendants Undisputedly Injured Graham.......................... 7

      B.      No Issues of Fact or Law Preclude Summary Judgment in Graham's Favor on
            His California Civil Code Section 3344 Counterclaim........................................... 8

            1.      Counterclaim Defendants Undisputedly Made a Knowing Use ................ 9

            2.      There Is No Genuine Dispute that the Website's Use of Graham's
                Name and Image Was Directly Connected to Its Commercial Purpose ..... 9

      CONCLUSION................................................................................................. 10

## TABLE OF AUTHORITIES

### CASES

*Abdul-Jabbar v. GMC,*
   85 F.3d 407 (9th Cir. 1996) ............................................................................6

*Branca v. Mann,*
   2012 U.S. Dist. LEXIS 112574 (C.D. Cal. Aug. 10, 2012)...........................10

*Davis v. Elec. Arts., Inc.,*
   775 F.3d 1172 (9th Cir. 2015) .........................................................................7

*Eastwood v. Superior Court,*
   149 Cal. App. 3d 409 (1983) .......................................................................6, 7

*Fairfield v. Am. Photocopy Equip. Co.,*
   138 Cal. App. 2d 82 (1955) ..............................................................................7

*Ideal Steel Supply Corp. v. Anza,*
   652 F.3d 310 (2d Cir. 2011).............................................................................3

*New World Solutions, Inc. v. NameMedia Inc.,*
   150 F. Supp. 3d 287 (S.D.N.Y. 2015).........................................................4, 5

*New York v. St. Francis Hosp.,*
   94 F. Supp. 2d 423 (S.D.N.Y. 2000).................................................................5

*Rafter v. Liddle,*
   2006 U.S. Dist. LEXIS 55869 (S.D.N.Y. Aug. 3, 2006)...................................2

*Wong v. Golden State Auction Gallery, Inc.,*
   2016 U.S. Dist. LEXIS 27377 (N.D. Cal. Mar. 3, 2016).................................9

### STATUTES

California Civil Code Section 3344..............................................................2, 8, 9

### OTHER AUTHORITIES

Federal Rule of Civil Procedure 12 ....................................................................3

Federal Rule of Civil Procedure 37 .................................................................1, 3

Local Rule of the United States District Courts for the Southern and Eastern
   Districts of New York 26.1 .........................................................................2, 4, 5

9781833.5

Graham submits this Reply in further support of his motion for summary judgment on liability on his Right of Publicity Counterclaims.  Graham incorporates herewith his brief in opposition to Counterclaim Defendants' summary judgment motion (the "Graham Opposition Brief" or "Graham Opp. Br.") (Dkt. 202) and the Declaration of Jeffrey Movit (Dkt. 200). Capitalized terms are defined in the Graham Opposition Brief and/or in Graham's Memorandum of Law in Support of Motion for Summary Judgment (the "Initial Graham MSJ Br.") (Dkt. 188).

## PRELIMINARY STATEMENT

In his moving papers, Graham presented the undisputed facts and well-established legal standards demonstrating his entitlement to summary judgment on his Right of Publicity Counterclaims.  **In opposition, Counterclaim Defendants fail to raise any genuine issue of material fact in dispute.**  Instead, they make unavailing arguments for preclusion of Graham's undisputed evidence on purported procedural grounds, and mischaracterize the legal standards.

*First*, Counterclaim Defendants argue that the Court should not apply California law to the Counterclaims because Graham alleged in his pleading that he is "residing in" California (instead of using the word "domiciliary"), even though Counterclaim Defendants fully understood Graham's allegations were about his domicile.  This purported difference is utterly irrelevant given the undisputed evidentiary record establishing Graham's California domicile.

*Second*, Counterclaim Defendants falsely argue that Graham purportedly failed to "disclose" that he would be relying upon his own testimony and that of Mr. Tyler—and that Graham should be precluded under Rule 37 from relying upon the Graham and Tyler Declarations as a result.  This argument does not bear the slightest scrutiny.  Counterclaim Defendants cannot dispute that they were offered the depositions of Mr. Graham and a business management representative, but they declined to take them.  It is entirely disingenuous for Counterclaim Defendants to claim that they were prejudiced by their own decision to avoid these

1

depositions, which they knew would only confirm Graham's domicile in California.

Counterclaim Defendants' "preclusion" argument should be rejected out of hand.

*Third,* because Counterclaim Defendants have no actual facts with which to dispute

Graham's common law right of publicity claim, they resort to misrepresenting the governing

legal standards. Specifically, they wrongly argue that a plaintiff must be the "central figure" of

an image in order for that image to provide the basis for a right of publicity claim. However, as

discussed below, the case law imposes no such requirement on a plaintiff.

*Finally*, Counterclaim Defendants similarly are unable to raise any actual factual issues

precluding summary judgment on Graham's claim under California Civil Code Section 3344,

and thus again misstate the relevant legal standards. For example, they argue that the purported

distance on the Website's homepage between the Hebrew Hustle logo and the image of Graham

operates as a material fact to bar Graham's motion on his Section 3344 claim. There is no

authority for such a proposition; the distance between Graham's image and the Hebrew Hustle

logo is an utterly irrelevant consideration with respect to Section 3344.

## ARGUMENT

## I.   Counterclaim Defendants' Domicile Arguments Fail to Raise an Issue of Fact

Counterclaim Defendants resort to specious procedural arguments to attempt to preclude

the undisputed fact of Graham's domicile in the State of California. These attempts fail.

### A.   The Evidence Is Undisputed That Graham Is a California Domiciliary

In support of his summary judgment motion, Graham filed with the Court his Rule 26.1

Statement (Dkt. 187, Ex. 2) which establishes he is domiciled in the State of California. This

verified statement, made on personal knowledge, constitutes admissible evidence. *Rafter v.

Liddle*, 2006 U.S. Dist. LEXIS 55869, at *16 (S.D.N.Y. Aug. 3, 2006). It is therefore sufficient

in and of itself to establish Graham's domicile. Nonetheless, in an overabundance of caution,

9781833.5

Graham also filed with the Court declarations from himself and his business manager Larry Tyler which also establish his California domicile.  (Dkt. 185; Dkt. 186.)  In contrast, Counterclaim Defendants have failed to provide this Court with a shred of evidence that Graham is domiciled anywhere other than California.  Accordingly, it is undisputed that Graham is domiciled in California.

### B.      There Is No Basis to Prevent Graham from Establishing His Domicile

Counterclaim Defendants assert two arguments to try to prevent the Court from acknowledging the undisputed fact of Graham's California domicile.  *First*, Counterclaim Defendants repeat a meritless argument from their Rule 12(c) motion—that the Court is purportedly prevented from considering Graham's domicile in California merely because the Counterclaims used the word "resident" instead of "domiciliary."  But Counterclaim Defendants were fully on notice of the meaning and intent of this allegation since the beginning; in their Replies to the Counterclaims, they alleged Graham was not a domiciliary of California, but rather of Canada.  Dkt. 46; Dkt. 47.  Thus, as explained more fully in the Graham Opposition Brief (at pp. 4-5), the "perceived gap[]"claimed to exist by Counterclaim Defendants is non-existent and in all events has been filled by the undisputed evidence that Graham is a California domiciliary.  *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 325 (2d Cir. 2011).

*Second*, Counterclaim Defendants assert the preposterous argument that Graham should be precluded under Rule 37 from offering the declarations of Graham and his business manager Mr. Tyler due to a purported failure by Graham to "disclose" them as witnesses.  However, there was no such failure.  Quite the opposite.  Counterclaim Defendants **were offered the depositions of both Graham and a business management representative**, but they declined to take them.  Movit Opp. Decl., ¶¶ 3-4.  Rather than deposing these witnesses, **Counterclaim Defendants suggested** the parties stipulate to a Joint Statement in lieu of further discovery on

the Counterclaims.  *Id.*, ¶ 4 and Ex. B.[1]  They cannot plausibly claim to have been "sandbagged" or prejudiced by their own decision to forego further discovery into Graham's domicile. [2]

Nonetheless, Counterclaim Defendants incredibly assert they believed that Messrs. Graham and Tyler would not be witnesses on the issue of Graham's domicile.  This self-serving assertion is wholly belied by Counterclaim Defendants having asked Graham to verify his domicile in his Rule 26.1 Statement as the key witness on that topic.  Further, Graham offered both himself and his business manager for deposition as the only two witnesses on all topics regarding the Counterclaims.  Counterclaim Defendants' contention that the testimony of Messrs. Graham and Tyler on domicile should be disregarded simply because they were not listed in response to an interrogatory asking for "witnesses who have knowledge or information relevant to the subject matter of the Counterclaims" (CC Def. Opp. Br. at 3) is nonsensical.

Counterclaim Defendants also assert a "red herring" argument that Graham should be precluded from relying upon the declaration **testimony** of Messrs. Graham and Tyler as a result of Graham's objections to certain of Counterclaim Defendants' **document** demands.[3]  But Graham is not relying upon **any** documents on this motion that he did not produce in discovery. Neither the Graham Declaration nor the Tyler Declaration attaches any documents.  Again, Counterclaim Defendants had the opportunity to depose both declarants, but declined to do so.

---

[1] The stipulation did not take away the right to raise additional facts with the Court—indeed, each side proffered its own separate statement of additional facts on summary judgment.

[2] This is the **opposite** of the facts in the case on which Counterclaim Defendant rely, *New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 309 (S.D.N.Y. 2015), in which the court struck the declaration of a witness who "fail[ed] to appear for his deposition … in bad faith."

[3] Graham's objections to the demands were proper, as they were overbroad and harassing in seeking sensitive, unnecessary materials like "[a]ll documents concerning Drake's residences in the United States from April 16, 2014 to date," all of Graham's 2014 tax returns, and "all documents concerning" any of Graham's credit cards during the first half of 2014.  Motta Decl. (Dkt. 191) Ex. M, p. 4; Ex. O, pp. 2-3.

*New World Sols*, 150 F. Supp. 3d at 316 (denying motion to strike affidavit where a witness had been properly disclosed but the adverse party failed to properly notice and take his deposition).

      **C.**      **The Assertions in the Tyler Declaration Are Made on Personal Knowledge**

Counterclaim Defendants' final swing at the Tyler Declaration—that it purportedly is not based upon personal knowledge—also fails.  A witness's "conclusions based on personal observations over time may constitute personal knowledge."  *New York v. St. Francis Hosp.*, 94 F. Supp. 2d 423, 425 (S.D.N.Y. 2000) (after years in his professional position, witness could testify with personal knowledge regarding his observations).  From 2014 through the present, Tyler and his firm have provided business management and accounting services to Graham. Tyler Decl., ¶ 2.  These services include paying bills on behalf of Graham, assisting with real estate matters, and preparing Graham's tax returns.  *Id.*  As a result of Mr. Tyler's professional relationship with Graham, and his personal observations over time in connection with same, Mr. Tyler indeed has personal knowledge of Graham's residence, travels, plans for the future, and business activities—*i.e.*, the very matters discussed in the Tyler Declaration.  *New York*, 94 F. Supp. 2d at 425.  In any event, the record remains **undisputed** that Graham is a domiciliary of California even if the Court looks at no document other than the Rule 26.1 Statement.

Moreover, given the absence of any facts whatsoever establishing a non-California domicile, Counterclaim Defendants' criticism that the Tyler Declaration does not discuss each and every "factual indication[] of [Graham's] domiciliary intent" that could possibly exist such as club memberships and voting records (CC Def. Opp. Br. at 12) is irrelevant.

**II.**      **Counterclaim Defendants Cannot Dispute That Graham Is Entitled to Summary Judgment as to Liability on His Right of Publicity Counterclaims**

Counterclaim Defendants have failed to proffer any facts or law to dispute that Graham is entitled to summary judgment as to liability on both of his Right of Publicity Counterclaims.

9781833.5

### A.  No Issues of Fact or Law Preclude the Entry of Summary Judgment in Graham's Favor on His Common Law Right of Publicity Counterclaim

Counterclaim Defendants do not dispute that to prevail on his common law claim, Graham must prove: (1) defendant's use of plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.  (Initial Graham MSJ Br. at 5) (citing *Abdul-Jabbar v. GMC*, 85 F.3d 407, 413-14 (9th Cir. 1996)).  Counterclaim Defendants also do not dispute that, as a matter of law, Graham satisfied the first and third elements of this test.  Although Counterclaim Defendants argue that Graham has not satisfied the second and fourth elements, their arguments (which are duplicative of the assertions in their earlier-filed briefs) are without basis and should be rejected.

### 1.  Counterclaim Defendants Undisputedly Used Graham's Name and Image to Their Commercial Advantage

Counterclaim Defendants cannot point to any issue precluding a finding by this Court that they used Graham's name and image to their commercial advantage.  They do not dispute that Graham is an international celebrity, that they intentionally put his name and image on their Website, and that the purpose of their Website was to "advertise and promote [their] music publishing company, Hebrew Hustle."  CC Def. Mem. at 13.  As Graham explained, the defendant's use of the plaintiff's name and/or image is deemed to be to the defendant's "commercial advantage" when—as here—it is **attractive to viewers**, thus providing the defendant with a leg up in the marketplace.  *Abdul-Jabbar*, 85 F.3d at 415.  This is because "[t]he first step toward selling a product or service is to attract the consumers' attention," *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 420 (1983), and "[b]ecause of a celebrity's audience appeal, people respond almost automatically to a celebrity's name or picture."  *Id.*

Instead, Counterclaim Defendants re-raise the baseless contention they asserted in their earlier briefs—that a plaintiff purportedly must be the "central figure" of an image in order to

show that the defendant's use of the image provided the defendant with a commercial advantage. CC Def. Opp. Br. at 14.  As Graham previously explained, California courts reject the argument that a defendant's use of numerous individuals' images (whether authorized or unauthorized) can excuse a violation of the right of publicity.  (Graham Opp. Br. at 16) (citing *Davis v. Elec. Arts., Inc.*, 775 F.3d 1172, 1181 (9th Cir. 2015)); *see also Eastwood*, 149 Cal. App. 3d at 414 (addressing right of publicity claim involving image of two celebrities)).  *Davis* is instructive.  In that case, the defendant EA used, without authorization, the likenesses of **6,000** football players in its video game.  The court rejected EA's argument that "because there are several thousand players depicted in Madden NFL, any individual player's likeness has only a *de minimis* commercial value" and held: "Having chosen to use the players' likenesses, [defendants] cannot now hide behind the numerosity of its potential offenses or the alleged unimportance of any one individual player." *Id.* at 1181 (citation omitted).  The identical analysis applies here.[4]

Counterclaim Defendants also wrongly argue that a right of publicity claim requires a "statement or suggestion" that the plaintiff "used" the defendant's "services."  (CC Def. Opp. Br. at 15) (citing *Fairfield v. Am. Photocopy Equip. Co.*, 138 Cal. App. 2d 82 (1955)).  Although *Fairfield* did involve an express false endorsement, there is no requirement that the use of a celebrity's image be in the context of a false endorsement to state a right of publicity claim. Indeed, there was no such explicit false endorsement in key right-of-publicity cases discussed above including *Eastwood* and *Davis*.  In any event, the placement of Graham's image on the Website **did** suggest he used and/or endorsed Counterclaim Defendants' services.  *See infra.*

### 2. Counterclaim Defendants Undisputedly Injured Graham

Counterclaim Defendants do not—and cannot—dispute the caselaw Graham previously

---

[4] In their Opposition Brief, Counterclaim Defendants fleetingly reference the so-called "incidental use" defense to a right of publicity claim.  CC Def. Opp. Br. at 14.  As Graham previously explained, that defense has no applicability here.  Graham Opp. Br.at 16-18.

cited holding that when, as here, a celebrity's likeness has been appropriated for a commercial purpose and without authorization or compensation, the celebrity has been injured. (Initial Graham MSJ Br. at 7) (citing *Fraley v. Facebook*, 830 F. Supp. 2d 785, 807 (N.D. Cal. 2011) (citing *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 693 (9th Cir. 1998) (former major-league baseball player "was injured because he was not compensated for the use of his likeness")).

Instead, Counterclaim Defendants make another unavailing preclusion argument. They baselessly contend Graham should be precluded from asserting they caused injury to the "commercial value of his likeness" merely based upon an interrogatory response by Graham stating that he cannot yet quantify his damages. (CC Def. Opp. Br. at 7-10.) However, Graham's interrogatory response was appropriate, as expert discovery will be conducted **after** dispositive motions are decided. (Dkt. 167.) Because Graham intends to rely on expert testimony (and **not** on documents produced in fact discovery) to calculate his damages, it was proper for Graham to object to quantifying those damages prior to expert disclosures. Contrary to Counterclaim Defendants' assertion, Graham did **not** state in his interrogatory response or elsewhere that his damages are limited to "Counterclaim Defendants' profits …." Rather, Graham stated in his Counterclaims that he seeks "actual and compensatory damages" as well as "restitution and Counterclaim Defendants' profits," among other relief. (Dkt. 41 at 20.)

**B.     No Issues of Fact or Law Preclude Summary Judgment in Graham's Favor on His California Civil Code Section 3344 Counterclaim**

Counterclaim Defendants do not dispute that a plaintiff who has proven a common-law right of publicity claim has also proven a claim under California Civil Code Section 3344, provided that the plaintiff can also establish: (1) a knowing use by the defendant; and (2) a direct connection between the use and the defendant's commercial purpose. (Initial Graham MSJ Br. at 8.) There is no genuine dispute that Graham has satisfied both these elements as a matter of law.

### 1. Counterclaim Defendants Undisputedly Made a Knowing Use

There is no **genuine** dispute that Counterclaim Defendants' choice to feature Graham's name and image was knowingly made to further their commercial purpose of advertising and promoting Counterclaim Defendants' services through their Website. *First*, they concede the purpose of their Website is to "**advertise and promote** [their] music publishing company, Hebrew Hustle." (CC Def. Mem. at 13) (emphasis added). *Second*, Counterclaim Defendants also concede they deliberately chose Graham's image when Hacker "obtained the Photograph from a third-party public, Internet source." (Joint Statement of Undisputed Facts (Dkt. 187), ¶ 6). *Finally*, Counterclaim Defendants admit they control the Website. (Declaration of Stephen Hacker (Dkt. 190), ¶ 2.)[5] Based upon these undisputed facts, Counterclaim Defendants' use of Graham's name and image cannot be characterized as anything other than knowing.

The knowing nature of Counterclaim Defendants' use is underscored by the inapposite case upon which they rely, *Wong v. Golden State Auction Gallery, Inc.*, 2016 U.S. Dist. LEXIS 27377 (N.D. Cal. Mar. 3, 2016). In *Wong*, the court denied summary judgment on a Section 3344 claim because of testimony "suggest[ing] the use of Ms. Wong's name was a mistake or inadvertent ...." *Id.* at *9. Here, it is undisputed that there was no such mistake or inadvertence.

### 2. There Is No Genuine Dispute that the Website's Use of Graham's Name and Image Was Directly Connected to Its Commercial Purpose

Graham explained in his prior briefs that Counterclaim Defendants' use of Graham's name and image was directly connected to the Website's commercial purpose because their placement on the Website would attract the viewer's attention and suggest a false endorsement of Counterclaim Defendants. Initial Graham MSJ Br. at 9; Graham Opp. Br. at 18-19 (citing

---

[5] Counterclaim Defendants unconvincingly protest that they did not use Graham's name and image for a commercial purpose. (CC Def. Opp. Br. at 17.) However, Counterclaim Defendants pointedly are unable to offer any other purpose for the inclusion of Graham's name and image on their Website than to promote their commercial services—as no such other purpose exists.

*Eastwood*, 149 Cal. App. 3d at 420 (finding direct connection between defendant's use of Clint Eastwood's image on the cover of its magazine and defendant's commercial purpose because the use would "motivate a decision to purchase" the magazine)).  As the Court stated at the July 13, 2017 conference, the Website's use of images of Graham and other celebrities is "saying look at the pantheon of people, look at the names we represent" (Tr. at 16:1-3)—*i.e.* it is falsely suggesting an endorsement by Graham.

In their opposition papers, Counterclaim Defendants try, but fail, to dispute that the "direct connection" prong has been satisfied through two unavailing arguments.  *First,* Counterclaim Defendants illogically argue there is no direct connection between the use and commercial purpose simply because of: (1) the nature of Graham's "gesture" in the Image at issue; and (2) the purported distance on the Website's homepage between the Hebrew Hustle logo and the Image.  However, Counterclaim Defendants fail to cite any reason or explanation (as none exists) why the "gesture" of Graham is incompatible with the Website's commercial purpose.  Similarly, Counterclaim Defendants also fail to cite any case requiring that an image of a celebrity on a website must have a certain proximity to the defendant's corporate logo to satisfy the "direct connection" test.  Certainly, the case upon which they rely, *Branca v. Mann*, 2012 U.S. Dist. LEXIS 112574 (C.D. Cal. Aug. 10, 2012), imposes no such requirement.

*Second,* Counterclaim Defendants assert a "straw man" argument that the Court's statement at the July 13, 2017 conference does not constitute the law of the case.  However, Graham never contended it constitutes the law of the case.  Rather, it is an apt observation that applies with equal persuasiveness at the current summary judgment stage as it did in July 2017.

## CONCLUSION

Graham respectfully requests that the Court grant his motion for summary judgment.

9781833.5

DATED:    February 12, 2018      MITCHELL SILBERBERG & KNUPP LLP
            New York, New York

By:   /s/ Christine Lepera

Christine Lepera (*ctl@msk.com*)
Jeffrey M. Movit  (*jmm@msk.com*)
12 East 49th Street, 30th Floor
New York, New York 10017-1028
Tel.: (212) 509-3900; Fax: (212) 509-7239

*Attorneys for Counterclaim Plaintiff*

11

9781833.5