UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------
                                      :

ESTATE OF JAMES OSCAR SMITH, *et ano.*,            :

                                        :

                    Plaintiffs,     :        14cv2703

                                        :

          -against-           :      <u>OPINION &amp; ORDER</u>

                                        :

CASH MONEY RECORDS, INC., *et al.*,      :

                                        :

                    Defendants.    :

----------------------------------------

WILLIAM H. PAULEY III, Senior United States District Judge:

          Counterclaimant Aubrey Drake Graham ("Drake") and Counterclaim Defendants Hebrew Hustle, Inc. ("Hebrew Hustle") and Stephen Hacker ("Hacker," and together with Hebrew Hustle, "Counterclaim Defendants") bring dueling motions for summary judgment on Drake's counterclaims. Drake moves for summary judgment on his common law right of publicity and California Civil Code § 3344 claims, while Counterclaim Defendants move for summary judgment on all four counterclaims. Counterclaim Defendants also move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and to strike two declarations that Drake filed in support of his motion for summary judgment. For the reasons that follow, the parties' motions for summary judgment and Counterclaim Defendants' motion for judgment on the pleadings are denied. Counterclaim Defendants' motion to strike is granted in part and denied in part.

<u>BACKGROUND</u>

          In April 2014, Hebrew Hustle, with the Estate of James Oscar Smith, sued Drake and others, alleging that Drake infringed the copyright to Smith's track "Jimmy Smith Rap" by

1

sampling it in "Pound Cake/Paris Morton Music 2." (See Complaint, ECF No. 2 ("Compl."),

¶¶ 19, 32–35.) See also Estate of Smith v. Cash Money Records, Inc., 253 F. Supp. 3d 737, 742–

44 (S.D.N.Y. 2017). In May 2017, this Court held that Drake's sampling was protected under

the fair use doctrine. Estate of Smith, 253 F. Supp. 3d at 752.

With that portion of this lawsuit resolved, the parties began litigating Drake's

Counterclaims. Those counterclaims are: (1) false endorsement under the Lanham Act; (2)

violation of California's common law right of publicity; (3) violation of California Civil Code

§ 3344; and (4) unfair competition under California Business & Professions Code § 17200 et seq.

(First Amended Answer to the Complaint and Counterclaims of Defendant Aubrey Drake

Graham, ECF No. 41 ("Counterclaims") ¶¶ 18–43.)

The facts undergirding the Counterclaims are relatively straightforward. Drake is

a successful recording artist, rapper, songwriter, and actor. (Compl. ¶ 22.) When this lawsuit

was filed, Drake had "sold over five (5) million albums worldwide and earned a Grammy

Award." (Compl. ¶ 22.) Hebrew Hustle provides music publishing and management services to

individuals in the music industry. (Rule 56.1 Joint Statement of Undisputed Facts and Statement

of Additional Facts for which No Genuine Dispute Exists of Counterclaim Pl. Aubrey Drake

Graham, ECF No. 187 ("Joint 56.1 Statement"), ¶ 1.) Hacker is Hebrew Hustle's sole owner.

(Joint 56.1 Statement ¶ 2.) He operates, designs, and makes changes to the website

www.hebrewhustle.com (the "Website"). (Joint 56.1 Statement ¶ 3; Decl. of Stephen Hacker,

ECF No. 90 ("Hacker Decl.") ¶ 2.)

From December 2013 to July 2014, the Website included two references to Drake. First, the Website's homepage displayed Drake's photograph (the "Photograph"). (Joint 56.1 Statement ¶¶ 4–5; Ex. A.) The Photograph appeared as follows:



In the Photograph, Drake is seen to the left of the rappers professionally known as Lil Wayne and Birdman. (Joint 56.1 Statement ¶ 9, Ex. A.) Drake and Lil Wayne each display their middle finger. (Joint 56.1 Statement, Ex. A.) The Photograph was placed alongside approximately twenty to forty other photographs, each depicting other musical artists or album covers. (Joint 56.1 Statement, Ex. A.)[1]

Website visitors had to scroll down the homepage to see the Photograph. (Counterclaim-Defs.' Rule 56.1 Statement of Undisputed Facts Submitted in Supp. of their Mot.

---

[1] The parties dispute the precise number of photographs displayed, and Counterclaim Defendants submit an exhibit showing more photographs than seen in the joint exhibit agreed to by the parties. (Compare Joint 56.1 Statement, Ex. A (jointly agreed exhibit), with Decl. of Stephen Hacker, ECF No. 190, Ex. H.) The precise number of photographs that were displayed does not affect this Court's analysis.

for Summ. J., ECF No. 192, ¶ 6.)  When a visitor clicked the Photograph, text appeared

describing a recently released Lil Wayne song that "Hebrew Hustle presented . . . to [Lil] Wayne

shortly after [Lil Wayne] was released from his prison stint at Rikers Island."  (Joint 56.1

Statement ¶ 10, Ex. A.)  Hacker acquired the Photograph from a third-party internet source,

without obtaining Drake's consent, license, or permission to display it.  (Joint 56.1 Statement

¶¶ 6–7.)

        The second reference to Drake was on the Website's "Bio" page, where his name

appeared in the following sentence:  "Stephen has played a heavy hand with his clients in the

creation of hit songs for the likes of Eminem, Jay-Z, Kanye West, Lil Wayne, Drake, Nicki

Minaj and others."  (Hacker Decl. Ex. D.)  That sentence appeared at the end of a three-

paragraph description of Hacker's career.  (Hacker Decl. ¶ 3(a), Ex. D.)  Again, Hacker did not

obtain Drake's consent, license, or permission to use his name.  (Joint 56.1 Statement ¶ 7.)

        Counterclaim Defendants' clients never wrote or produced music for Drake, nor

did they enter into any agreements with him.  (Joint 56.1 Statement ¶ 12.)  However, they claim

to have managed musicians who either collaborated with or produced unreleased music for him.

(Joint 56.1 Statement ¶ 11.)  Hacker removed the two references to Drake on the day that

Drake's attorneys contacted him.  (Hacker Decl. ¶ 9.)[2]

<u>LEGAL STANDARD</u>

        "The standards to be applied for a motion for judgment on the pleadings pursuant

to Rule 12(c) are the same as those applied to a motion to dismiss pursuant to Rule 12(b)."  <u>SEC</u>

<u>v. Rorech</u>, 673 F. Supp. 2d 217, 220 (S.D.N.Y. 2009).  To survive a motion to dismiss, "a

_____

[2]        Drake argues briefly that this removal constitutes spoliation and warrants an adverse inference.  (<u>See</u>
Counterclaim Pl. Aubrey Drake Graham's Mem. of Law in Opp'n to Counterclaim Defs.' Mot. for Summ. J. and
Dismissal of the Claims of the Counterclaim Pl., ECF No. 202, at 14–15, 20–21.)  The merits of that argument are
reserved for trial.

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case."  L–7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (internal citation and quotation marks omitted).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Davis v. Blige, 505 F.3d 90, 97 (2d Cir. 2007).  The moving party bears the burden of demonstrating the absence of any genuine dispute of material fact.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment [as m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation, quotation marks, and alterations omitted).

In resolving a motion for summary judgment, a court resolves all ambiguities and draws all reasonable inferences against the movant.  See Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).  On dueling motions for summary judgment, the court must evaluate each party's motion on its merits and determine whether either is entitled to judgment as a matter of law.  Coutard v. Mun. Credit Union, 848 F.3d 102, 114 (2d Cir. 2017).

Under Federal Rule of Civil Procedure 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or a trial, unless the

failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). "The purpose of [Rule 37] is to prevent the practice of 'sandbagging' an opposing party with new evidence." Ebewo v. Martinez, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (internal citation omitted). "[P]reclusion is a drastic remedy and therefore [warrants] discretion and caution." Ventra v. United States, 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000).

DISCUSSION

I.      Counterclaim Defendants' Rule 12(c) Motion and Motion to Strike

Counterclaim Defendants move for judgment on the pleadings on Drake's state-law claims. That motion derives from a single word Drake neglected to include in his Counterclaims. In his pleading, Drake described California as his residence, rather than his domicile. (See Counterclaims ¶ 4 ("Graham is an individual residing in the State of California.").)

"A federal court sitting in diversity or adjudicating state law claims that are pendant to a federal claim must apply the choice of law rules for the forum state." Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989). In New York, "questions concerning personal property rights are to be determined by reference to the substantive law of [a person's] domicile." SE Bank, N.A. v. Lawrence, 489 N.E.2d 744, 745 (N.Y. 1985); see also Rogers, 875 F.2d at 1002 (Oregon law applied to Oregon domiciliary's right of publicity claim); Cummings v. Soul Train Holdings LLC, 67 F. Supp. 3d 599, 602 (S.D.N.Y. 2014) (Illinois law applied to Illinois domiciliary's right of publicity claim). Because Drake described California as his residence, and did not specify his domicile, Counterclaim Defendants assert that Drake's California state-law claims fail as a matter of law.

"Domicile is not necessarily synonymous with residence . . . and one can reside in one place but be domiciled in another . . . ." Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 47 (1989) (internal citations and quotation marks omitted). Instead, "[r]esidence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." Texas v. Florida, 306 U.S. 398, 424 (1939); see also Hai Yang Liu v. 88 Haborview Realty, LLC, 5 F. Supp. 3d 443, 446 (S.D.N.Y 2014).

While Counterclaim Defendants may be correct that Drake erred in alleging residence rather than domicile, this argument is much ado about nothing. That is because four years of intervening discovery have corrected Drake's pleading error.

The Second Circuit addressed a similar situation in Ideal Steel Supply Corporation v. Anza, 652 F.3d 310 (2d Cir. 2011). There, the Court of Appeals reviewed a district court's dismissal of a RICO claim under Rule 12(c) based on deficiencies in the Complaint. Ideal Steel, 652 F.3d at 323. Like the case at hand, the motion had been brought after discovery was complete. Ideal Steel, 652 F.3d at 325. The Second Circuit vacated the district court's dismissal and remanded for trial, holding that a Rule 12(c) motion need not "be granted if evidence that had already been produced during discovery would fill the perceived gaps in the Complaint." Ideal Steel, 652 F.3d at 325, 328. In other words, "the [district] court should have taken into account" that discovery had plugged any gaps in the pleading. Ideal Steel, 652 F.3d at 325; see also Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 71 (2d Cir. 2014) (denying motion to dismiss "where discovery had apparently begun to adduce additional information supportive of plaintiffs' claim," and noting Twombly does "not require that a complaint be dismissed if evidence had already been produced during discovery that would fill the perceived gaps in the complaint").

Here, although Drake failed to plead domicile, in July 2017, he provided a verified statement that he is a "resident and domiciliary of the State of California." (Joint 56.1 Statement, Ex. B, at 2.) Under <u>Ideal Steel</u>'s guidance, that response corrected Drake's minor pleading deficiency.

Indeed, Counterclaim Defendants should not be surprised that Drake clarified California as his domicile. In August 2014, one month after Drake filed his Counterclaims, Counterclaim Defendants asserted an affirmative defense that Drake "is not domiciled in the State of California." (Reply of Hebrew Hustle, Inc. to Counterclaims of Aubrey Drake Graham, ECF No. 46, ¶ 45; Reply of Stephen Hacker to Counterclaims of Aubrey Drake Graham, ECF No. 47, ¶ 45.) Clearly, they knew that Drake meant to plead California as his domicile, and had made a drafting error. That minor mistake has been corrected.

Counterclaim Defendants' rejoinder that Drake provides no underlying proof of domicile is of no moment for purposes of their Rule 12(c) motion. A pleading does not require underlying proof—it simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, Counterclaim Defendants' Rule 12(c) motion, filed after the close of discovery, is denied.

In moving for summary judgment, Drake provides two additional documents asserting domicile: (1) his own declaration; and (2) a declaration from his business manager, Larry Tyler. (<u>See</u> Decl. of Aubrey Drake Graham in Supp. of Mot. for Summ. J., ECF No. 185 ("Drake Decl."); Decl. of Larry Tyler in Supp. of Mot. for Summ. J., ECF No. 186 ("Tyler Decl.").) Counterclaim Defendants move to strike these declarations under Federal Rule of Civil Procedure 37(c)(1), arguing that Drake and Tyler were not listed in Drake's Rule 26 disclosures.

Although Drake and Tyler may not have been listed in those disclosures, in September and October 2017, Drake offered both himself and Tyler as deposition witnesses. (See Decl. of Jeffrey M. Movit in Opp'n to Counterclaim Defs.' Mot. for Summ. J., and Dismissal of the Claims of the Counterclaim Pl., ECF No. 200 ("Movit Decl."), at ¶ 3; Ex. A.) Counterclaim Defendants chose to waive those depositions, and instead proposed that the parties forego additional fact discovery in exchange for a joint stipulation of facts. (Movit Decl. ¶¶ 4–5; Exs. B, C.) In other words, months before Drake and Tyler submitted their declarations, Counterclaim Defendants waived their rights to depose them.

Under these circumstances, the omission of Drake and Tyler from Drake's initial disclosures was harmless. See Advisory Committee's Notes to 1993 Amendments to Fed. R. Civ. P. 37 (harmless conduct includes "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties"); Harris v. Donohue, 2017 WL 3638452, at *2 (N.D.N.Y. Aug. 23, 2017) (denying sanctions where "[p]laintiff was clearly aware that both [witnesses] possessed relevant knowledge [and] could have taken the deposition of either individual at an appropriate time prior to trial and chose not to"); Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A., 2002 WL 31108380, at *2 (S.D.N.Y. Sept. 23, 2002) ("[W]hile [plaintiff] technically violated Rules 26(a) and 26(e) . . . its error was 'innocent' and harmless."). Accordingly, this Court declines to strike Drake and Tyler's declarations.

Finally, Counterclaim Defendants move to strike certain statements in Tyler's declaration, arguing that they are not based on personal knowledge. Counterclaim Defendants reach that conclusion because Tyler prefaces certain averments with the phrase "to the best of his knowledge," or that he "understands that," or is "informed and believe[s]." (See Tyler Decl. ¶¶ 3–5.)

Under Federal Rule of Evidence 602, a witness must "testify on the basis of personal knowledge." SEC v. Singer, 786 F. Supp. 1158, 1167 (S.D.N.Y. 1992). But "a witness'[s] conclusion based on personal observations over time may constitute personal knowledge . . . ." Singer, 786 F. Supp. at 1167 (emphasis original); see also New York *ex rel.* Spitzer v. St. Francis Hosp., 94 F. Supp. 2d 423, 425 (S.D.N.Y. 2000) (denying motion to strike statements claimed to be hearsay because they were based on declarant's personal observations over time).

Tyler declares that he has "personal knowledge of the matters [he] set[s] forth herein, except where stated to be upon information and belief." (Tyler Decl. ¶ 1.) He explains that his knowledge was acquired through handling of various matters for Drake. (Tyler Decl., ¶¶ 2–3.) It is reasonable to conclude that through that work, Tyler developed some personal knowledge of matters including where Drake lives and intends to live in the future. Cf. Folio Impressions, Inc. v. Byer Cal., 937 F.2d 759, 763–64 (2d Cir. 1991) ("The fact that [declarant] stated she 'believed' [something] rather than that she 'knew' so is not a basis for excluding her testimony . . . .") Therefore, Counterclaim Defendants' motion to strike the statements that Tyler prefaces are "to the best of [his] knowledge" or that he "understands" to be true or is "aware of" are denied. See SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 138 (2d Cir. 2009) (overruling district court's striking of statements prefaced by "[t]o my knowledge").

The one portion of Tyler's declaration that does not appear to be based on personal knowledge is the first sentence of paragraph five. There, Tyler describes that he is "informed and believe[s] that, from 2014 to the present, Mr. Graham has intended, and continues to intend, to maintain his principal and permanent residence and domicile in the State of California, i.e., for the State of California to be his permanent home." (See Tyler Decl. ¶ 5.) The

requirement that an "affidavit [] be made on personal knowledge" under Federal Rule of Civil Procedure 56(e)(1) "is not satisfied by assertions made on information and belief." Hicks, 593 F.3d at 167 (quoting SCR Joint Venture L.P., 559 F.3d at 138) (internal quotation marks omitted). Notably, Tyler specifically excludes statements made "upon information and belief" from matters of which he has personal knowledge. (See Tyler Decl. ¶ 1.) Therefore, this Court grants that portion of Counterclaim Defendants' motion to strike directed at the first sentence of paragraph five of Tyler's declaration.

II.    Motions for Summary Judgment

  1. *Lanham Act*

        Counterclaim Defendants move for summary judgment on Drake's Lanham Act claim. Under the Lanham Act, an individual is prohibited from using "any word, term, name, symbol, or device, or any combination thereof . . . which—is likely to cause confusion, or to cause mistake, or deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . ." 15 U.S.C. § 1125(a)(1). This provision "permits celebrities to vindicate property rights in their identities against allegedly misleading commercial use by others." Parks v. LaFace Records, 329 F.3d 437, 445 (6th Cir. 2003).

        Drake alleges that Counterclaim Defendants' use of the Photograph and his name misleadingly implied that Drake endorsed Hebrew Hustle. "The elements of a false endorsement claim under the Lanham Act are that the defendant, (1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship or approval of the goods or services." Roberts v. Bliss, 229 F. Supp. 3d 240, 248 (S.D.N.Y. 2017) (internal citation omitted); see also

Roberts, 229 F. Supp. 3d at 249 (a Lanham Act claim may be based on "the misleading implication that a celebrity or public figure endorses a product, when she does not"). "[T]he basic inquiry in an unfair competition action is whether the public is likely to be misled into believing that the defendant is distributing products manufactured or vouched for by the plaintiff." Warner Bros., Inc. v. Gay Toys, Inc., 658 F.2d 76, 79 (2d Cir. 1981) (internal citation and quotation marks omitted).

Counterclaim Defendants do not dispute that Hacker referenced Drake in commerce in connection with goods or services. Instead, they contend that the use was neither false nor misleading, and it therefore would not confuse a customer into thinking that Drake endorsed Hebrew Hustle.

First, this Court cannot state as a matter of law that placing Drake's Photograph on the Website's homepage, followed by a sentence on the Bio page that Hacker played a "heavy hand" in creating songs for Drake, was not misleading. In fact Hebrew Hustle and Hacker had very little to do with Drake —they never worked directly with or entered into any contracts with him. Indeed, Counterclaim Defendants cite to only three minor tangential connections between Hebrew Hustle and Drake. (Joint 56.1 Statement ¶ 11.) Placing Drake on both the homepage and Bio page could have misleadingly implied that their connection was much stronger. See Beastie Boys v. Monster Energy Co., 66 F. Supp. 3d 424, 450 (S.D.N.Y. 2014) (using Beastie Boys in Monster Energy's commercial could misleadingly imply "that the band was endorsing Monster Energy"); Burck v. Mars, Inc., 571 F. Supp. 2d 446, 455–56 (S.D.N.Y. 2008) (factual questions were raised by M&M's use of the "Naked Cowboy" figure).

Turning to the likelihood of confusion, "courts in the Second Circuit employ an eight-factor test originally laid out in <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492 (2d Cir. 1961)." <u>Jackson v. Odenat</u>, 9 F. Supp. 3d 342, 355 (S.D.N.Y. 2014). Those factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

<u>Kelly-Brown v. Winfrey</u>, 717 F.3d 295, 307 (2d Cir. 2013) (internal citation omitted). These factors are not applied mechanically—rather, a court is to "focus[] on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." <u>Starbucks Corp. v. Wolfe's Borough Coffee, Inc.</u>, 588 F.3d 97, 115 (2d Cir. 2009). When analyzing a false endorsement claim, "the 'mark' is the plaintiff's persona and the 'strength of the mark' refers to the level of recognition that the plaintiff has among the consumers to whom the advertisements are directed." <u>Jackson</u>, 9 F. Supp. 3d at 356. Further, "the quality of the products and 'bridging the gap' [elements] are often not considered." <u>Jackson</u>, 9 F. Supp. 3d at 356. "Normally, . . . likelihood of confusion is a factual question, centering on the probable reactions of prospective purchasers of the parties' goods." <u>Pirone v. MacMillan, Inc.</u>, 894 F.2d 579, 584 (2d Cir. 1990).

Counterclaim Defendants contend that no reasonable visitor to the Website would mistakenly conclude that Drake endorsed Hebrew Hustle. They rely principally on the Second Circuit's <u>Pirone</u> decision, holding that the defendant's display of Babe Ruth in a baseball calendar would not confuse consumers into thinking that Ruth endorsed the calendar. <u>Pirone</u>, 894 F.2d at 584–85. Instead, a reasonable customer would realize the calendar's "photographs

identify great ballplayers and by so doing indicate the contents of the calendar, not its source." Pirone, 894 F.2d at 584. By analogy, Counterclaim Defendants claim that a reasonable consumer would realize that the references to Drake merely represented the kind of music that Hebrew Hustle was involved in, not that Drake supported the company.

That argument fails because the facts are distinguishable from Pirone. This was not a website set up to display famous musicians. It was a website meant to promote Hebrew Hustle. Therefore, a reasonable visitor to the Website may have assumed that Drake's presence was meant to show Hacker works with Drake, and that Drake endorses Hebrew Hustle. Those visitors were likely looking for music representation and production services, and may have been enticed by seeing a celebrity that they recognized. There is no basis to assume such a customer would automatically conclude that these references were meant only to show that Hebrew Hustle works in hip-hop music. (See July 13, 2017 Hr'g Tr., ECF No. 161, at 16:1–3 (a consumer may have assumed the photos were meant to show "the pantheon of people [that Hebrew Hustle] represent[s]")

In weighing the Polaroid factors, the majority weigh against Counterclaim Defendants. The "mark" and "strength of the mark" are substantial— Drake is one of this decade's most popular musical artists, making him instantly recognizable to most Americans. See Allen v. Nat'l Video, Inc., 610 F. Supp. 612, 627 (S.D.N.Y. 1985) (the extent of Woody Allen's fame equated to his likeness and name being strong "marks" in false endorsement analysis). And Counterclaim Defendants did not use an image that merely resembled Drake— they used his actual photograph.

There is also significant overlap between Drake's fan base—consumers of hip-hop music—and the most likely visitors to the Website—those looking for representation in the

hip-hop industry. See Allen, 610 F. Supp. at 628 (noting overlap between Woody Allen's fans—movie consumers—and customers of a movie rental business). Further, Counterclaim Defendants admit that they used Drake's persona purposely. Although Drake has not submitted evidence of actual confusion, this "need not be shown to prevail under the Lanham Act." Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir. 1986); Beastie Boys, 66 F. Supp. 3d at 456 (same).

Jackson v. Odenat is instructive. See 9 F. Supp. 3d at 354–60. There, the website www.worldstarhiphop.com utilized a masthead displaying the rapper "50 Cent" and his group, "G-Unit," among other hip-hop artists. Jackson, 9 F. Supp. 3d at 349. Although Judge Keenan recognized that "several hip-hop musicians on [the] masthead could suggest that [it] is merely identifying the subject matter of the website," the court nonetheless held that reasonable juries could differ on whether a consumer would be "confused as to [50 Cent's] sponsorship of worldstarhiphop.com." Jackson, 9 F. Supp. 3d at 357.

Counterclaim Defendants further try to distinguish this case by arguing that the Photograph was not in close proximity to the Hebrew Hustle logo, and that it was among many other photographs. While those are relevant considerations, they do not automatically defeat the possibility of confusion. Nor is this Court persuaded by Counterclaim Defendants' contention that no customer could infer endorsement because Drake is holding up his middle finger. As Counterclaim Defendants themselves recognized, such a symbol is merely "evocative of hip-hop culture." (Feb. 23, 2018 Hr'g Tr., ECF No. 207, at 15:4 –5.) At most, these contentions are arguments properly presented to a jury.

In short, a visitor to the Website could have been confused into thinking Drake endorsed Hebrew Hustle. When visitors saw Drake's Photograph and a statement claiming

Hacker played a "heavy hand" in creating hit songs for him, they may have assumed Drake endorsed Hebrew Hustle, even if that was not Counterclaim Defendants' intent. See Allen, 610 F. Supp. at 628. ("Defendants may not have intended to imply that plaintiff actually endorsed their product, but they happily risked creating that impression in an attempt to gain commercial advantage through reference to plaintiff's public image.").

2. *California Common Law Right of Publicity*

Both parties move for summary judgment on Drake's California common law right of publicity claim. "[T]he right of publicity has developed to protect the commercial interest of celebrities in their identities." White v. Samsung Elecs. Am., Inc., 971 F. 2d 1395, 1398 (9th Cir. 1992) (internal citation omitted). A violation of this right is established through showing: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." Abdul-Jabbar v. Gen. Motors Corp., 85 F.3d 407, 413–14 (9th Cir. 1996); Youngevity Int'l, Corp. v. Smith, 224 F. Supp. 3d 1022, 1027 (S.D. Cal. 2016). Unlike claims under the Lanham Act, the common law right of publicity does not require establishing likelihood of customer confusion. Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc., 778 F.3d 1059, 1072–73 (9th Cir. 2015).

Drake contends that he has satisfied all required elements of this claim. This Court agrees that elements one and three are established and need no further analysis. Clearly, Counterclaim Defendants used Drake's likeness and that use was without Drake's consent— Hacker admits as much. (See Joint 56.1 Statement ¶¶ 4, 7; Hacker Decl. ¶ 2.) Instead, Counterclaim Defendants argue that Drake fails to establish the second and fourth elements,

namely, that the appropriation was to Counterclaim Defendants' commercial advantage and that Drake sustained resulting injury.

Counterclaim Defendants' arguments that Drake's likeness was not to their commercial advantage are unpersuasive. For instance, they explain that the Photograph was just one among many, rather than being central to the Website. But no authority that Counterclaim Defendants cite holds that the use of a celebrity's likeness must be paramount in order to find commercial advantage. For instance, in <u>Newcombe v. Adolf Coors Co.</u>, 157 F.3d 686 (9th Cir. 1998), while the Ninth Circuit held that commercial advantage had been shown through the defendants' use of a "drawing which resembled Newcombe [as] a central figure in the[ir] advertisement," <u>Newcombe</u>, 157 F.3d at 693, the Court of Appeals never held that Newcombe's status as the "central figure" was dispositive. And in any event, perhaps Drake was central to the Website. After all, he was on the Website's homepage, and was instantly recognizable among lesser-known artists.

Moreover, even if Drake was placed among other celebrities, that does not necessarily mean he conferred no commercial advantage on Hebrew Hustle. The right of publicity does not disappear because a celebrity was merely one among others. <u>See, e.g.</u>, <u>In re NCAA Student-Athlete Name & Likeness Licensing Litig.</u>, 724 F.3d 1268, 1276 n.7 (9th Cir. 2013) ("Having chosen to use the [plaintiffs'] likenesses, [defendant] cannot now hide behind the numerosity of its potential offenses or the alleged unimportance of any one individual . . . .").

Second, Counterclaim Defendants contend there was no commercial advantage because Drake was not placed next to the Hebrew Hustle logo. But this argument is equally unavailing, as no case places a proximity requirement between the use of a celebrity and the

company's name or logo. To the extent this argument bears on commercial advantage, it is a question for a jury.

Counterclaim Defendants' arguments are unconvincing because advertisers use celebrities specifically to attract customers. "The first step toward selling a product or service is to attract the customer's attention. Because of a celebrity's audience appeal, people respond almost automatically to a celebrity's name or picture." Eastwood v. Superior Court, 149 Cal. App. 3d 409, 420 (Cal. Ct. App. 1983), superseded by statute on other grounds as recognized in KNB Enters. v. Matthews, 78 Cal. App. 4th 362, 367 n.5 (Cal. Ct. App. 2000). That is why when Kareem Abdul-Jabbar sued General Motors Corporation for using his birth name, the Ninth Circuit held that "[t]o the extent [General Motors's] use of the plaintiff's birth name attracted television viewers' attention, [General Motors] gained a commercial advantage." Abdul-Jabbar, 85 F.3d at 415.

Relatedly, Counterclaim Defendants contend their use of Drake qualifies as "incidental use." While "[t]he contours of the incidental use doctrine are not well-defined in California . . . the general rule is that incidental use of a plaintiff's name or likeness does not give rise to liability." Yeager v. Cingular Wireless, LLC, 673 F. Supp. 2d 1089, 1099–1100 (E.D. Cal. 2009) (internal citation and quotation marks omitted). Determining whether a use was incidental requires assessing factors "such as (1) whether the use has a unique quality or value that would result in commercial profit to the defendant; (2) whether the use contributes something of significance; (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or reputation of the name or likeness relative to the rest of the publication." Davis v. Elec. Arts Inc., 775 F.3d 1172, 1180 (9th Cir. 2015) (internal citation omitted).

This Court does not find as a matter of law that Counterclaim Defendants' use of Drake was "incidental." Drake's inclusion likely offered some "unique quality or value" to the Website. See Davis, 775 F.3d at 1180; see also Restatement (Second) of Torts § 652C, comment d (incidental use applies when a likeness is published "for purposes other than taking advantage of [a celebrity's] reputation, prestige or other value associated with him") (emphasis added). Simply put, if Drake did not add something to the Website, then this Court questions why Hacker put him there (twice).

Finally, Counterclaim Defendants' reliance on D'Andrea v. Rafla-Demetrious is misplaced. See 972 F. Supp. 154 (E.D.N.Y 1997). First, D'Andrea is not a California case. And on the merits, D'Andrea dealt with a medical resident who sued his employer for "using a picture of him, without his consent, in a brochure." D'Andrea, 972 F. Supp. at 155. The Eastern District of New York held the use was "unquestionably incidental" as "D'Andrea's photograph was selected from among many . . . for the purpose of filling up space on a page." D'Andrea, 972 F. Supp. at 157. While that situation has some similarities, here, Drake was likely not placed on the Website merely to "fill up space." See Yeager, 673 F. Supp. 2d at 1100 ("Even if the mention of a plaintiff[] . . . is brief, if the use stands out prominently . . . or enhances the marketability of the defendant's product or service, the doctrine of incidental use is inapplicable.")

Counterclaim Defendants also contend that Drake fails to establish injury. But courts analyzing a common law right of publicity claim routinely "presume [injury] has been established if there is sufficient evidence to prove the first three elements." Fraley v. Facebook, Inc., 830 F. Supp. 2d 785, 807 (N.D. Cal. 2011); see also Solano v. Playgirl, Inc., 292 F.3d 1078, 1090 (9th Cir. 2002); Newcombe, 157 F.3d at 693. "Indeed, in cases involving celebrity

plaintiffs, the mere allegation that the plaintiff was not compensated has been deemed sufficient to satisfy the injury prong." Fraley, 830 F. Supp. 2d at 807. Accordingly, an unauthorized use of Drake's likeness to Counterclaim Defendants' commercial advantage satisfies the injury prong. The calculation of those damages can be explored through expert discovery.

Counterclaim Defendants also move to preclude Drake from offering "any evidence relating to the alleged commercial value of [his] name or image." (Notice of Motion, ECF No. 199, at 1.) This motion springs from Drake's July 2017 interrogatory answer, stating that a computation of damages was premature "until Graham receives discovery from Counterclaim Defendants that is sufficient to establish the full extent of their unauthorized use of his name and likeness, and financial information reflecting revenues received by Counterclaim Defendants . . . ." (Decl. of Anthony Motta in Opp'n to Counterclaim-Pl.'s Mot. for Summ. J. and in Supp. of Counterclaim-Defs.' Mot. to Preclude, ECF No. 196, Ex. R, at 4.) Based on that answer, Counterclaim Defendants assert that Drake waived damages arising from the commercial value of his persona.

This motion is denied, as Drake never waived any category of damages. In his Counterclaims, Drake asserted that he "suffered injury and actual damages in an amount to be proven at trial." (Counterclaims ¶ 36.) Drake's interrogatory answer did not unambiguously waive damages relating to the commercial value of his name and image. See Tray-Wrap, Inc. v. Six L's Packing Co., 984 F.2d 65, 68 (2d Cir.1993) ("[T]he conduct said to constitute a waiver must be clear and unequivocal, as waivers are never to be lightly inferred."); Am. Trucking Assoc., Inc. v. N.Y. State Thruway Auth., 238 F. Supp. 3d 527, 540 (S.D.N.Y. 2017), aff'd 886 F.3d 238 (2d Cir. 2018) ("Waiver is the conscious and voluntary relinquishment of a known right.") (emphasis omitted).

Counterclaim Defendants overlook the fact that this Court granted the parties' joint request to defer expert discovery until resolution of these motions. (Order, ECF No. 167.) Clearly, Drake intends to rely on expert discovery to calculate damages, including those arising from his commercial value.

Material issues of fact also preclude Drake's motion for summary judgment. First, this Court cannot conclude on this record that Drake has established California as his domicile. "The determination of a party's domicile is a mixed question of law and fact." Lew v. Moss, 797 F.2d 747, 750 (9th Cir. 1986); see also Hai Yang Liu, 5 F. Supp. 3d at 446. All that Drake offers is his and his business manager's sworn declarations, but no underlying evidence. While those declarations were sufficient to plead domicile, that does not mean they establish domicile. See Dist. of Columbia v. Murphy, 314 U.S. 441, 456 (1941) ("One's testimony with regard to his intention [regarding domicile] is of course to be given full and fair consideration, but is subject to the infirmity of any self-serving declaration, and may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts.").

In Bruce Lee Enterprises v. A.V.E.L.A., Inc., 2013 WL 822173 (S.D.N.Y. Mar. 6, 2013), the court addressed a right of publicity claim in which the parties "dispute[d] Bruce Lee's domicile." 2013 WL 822173, at *15. Reviewing the record, Judge Wood determined that "neither party ha[d] carried its burden" in establishing domicile, as there was conflicting testimony over whether Lee relocated from California to Hong Kong with the intent to remain there indefinitely. Bruce Lee Enters., 2013 WL 822173, at *15. Therefore, Lee's domicile at his time of death remained "a genuine issue of material fact." Bruce Lee Enters., 2013 WL 822173, at *15.

Here, Counterclaim Defendants vigorously contend that Drake's domicile is Toronto, Canada (his hometown), and Drake acknowledges that he is constructing a home there. (See Drake Decl. ¶ 3.) Although Counterclaim Defendants have "the burden of proving [] a change in domicile by clear and convincing evidence, see Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 243 (2d Cir. 1984), this Court understands that Counterclaim Defendants were frustrated at every turn in their effort to obtain evidence on this point. (See Decl. of Anthony Motta, ECF No. 191, Ex. N, at, 19 (Drake refused to produce documents concerning his United States and Canada residences); Ex. P, at 6–17 (Drake's refusal to produce motor vehicle licenses, driver's licenses, IDs, bank accounts, tax returns, et cetera). Accordingly, "[w]hile it is possible that the issue of domicile might be determined by way of a summary judgment motion, it [cannot] be so determined on the evidence which was presented." Katz, 737 F.2d at 244.

Additionally, although the majority of courts hold that a defendant's use of a celebrity's likeness was likely to that defendant's commercial advantage, those decisions did not hold that commercial advantage established as a matter of law. See Abdul-Jabbar, 85 F.3d at 415–16 (holding General Motors gained a commercial advantage "[t]o the extent [that its] use . . . attracted television viewer's attention" and "remand[ing] for trial."); Wendt v. Host Int'l, Inc., 125 F.3d 806, 811 (9th Cir. 1997) ("The ultimate issue for the jury to decide is whether the defendants are commercially exploiting the likeness of [plaintiffs] intending to engender profits to their enterprises."); White, 971 F.2d at 1399, 1402 (Vanna White "alleged facts showing that [defendants] had appropriated her identity," and remanding the case "to the jury"); Eastwood, 149 Cal. App. 3d 409, 421 (holding only that "Eastwood has sufficiently alleged that Enquirer has commercial exploited his name, photograph, and likeness under [] the common law") (emphasis added). Drake's reliance on Branca v. Mann, 2012 WL 3263610, at *6 (C.D. Cal.

Aug. 10, 2012) is not persuasive, as there, the right of publicity claim was ancillary to other claims and granted without a thorough analysis.

Hacker attests that "[n]either [he] nor Hebrew Hustle [] ever received any . . . communications from a third party concerning either the reference to Drake's name on the Website or the Photograph." (Hacker Decl. ¶ 11.) The minor presence of Drake on the website, coupled with the fact that when the Photograph was clicked it displayed text regarding a Lil Wayne song (not a Drake song), could lead a jury to determine Drake's use was not to Counterclaim Defendants' commercial advantage. Accordingly, while Drake has adduced evidence that his likeness was likely to Counterclaim Defendants' commercial advantage, he has not come forward with evidence demonstrating that there is no material issue of fact.

### 3. California Civil Code § 3344

California Civil Code § 3344 complements the common law right of publicity and adds two elements: (1) the use of the person's identity must have been knowing; and (2) there must have been "a direct connection between the use [of plaintiff's identity] and the [defendant's] commercial purpose." Abdul-Jabbar, 85 F.3d at 414 (internal citation, quotation marks, and alteration omitted); see Downing v. Abercrombie & Fitch, 265 F.3d 994, 1001 (9th Cir. 2001) ("The remedies provided for under California Civil Code § 3344 complement the common law cause of action; they do not replace or codify the common law.") While the common law right allows the use to be to a defendant's advantage "commercial or otherwise," under § 3344, the use must be commercial. See Cohen v. Facebook, Inc., 798 F. Supp. 2d 1090, 1094 (N.D. Cal. 2011).

Specifically, under § 3344:

Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products,

> merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof.

Cal. Civ. Code § 3344(a). "'Knowing' applies both to the use of the plaintiff's name or likeness and to the purpose of advertising or solicitation of purchases." Wong v. Golden State Auction Gallery, Inc., 2016 WL 829073, at *3 (N.D. Cal. Mar. 3, 2016).

Hacker admits that he "knowingly" placed the Photograph and Drake's name on the Website. (See Joint 56.1 Statement ¶ 6–7; Hacker Decl. ¶ 2 (stating that Hacker "set up" and "made all changes to the Website").) But he denies "knowingly" using them for advertising and contends they were never meant to promote Hebrew Hustle. The validity of that representation is a quintessential jury question.

Similarly, it is unclear if there was a "direct connection" between Hebrew Hustle's use of Drake and its Website's commercial purpose. Under § 3344, this is a determination of fact. See Cal. Civ. Code § 3344(e) ("[I]t shall be a question of fact whether or not the use of the person's name, . . . photograph, or likeness was so directly connected with the commercial sponsorship or with the paid advertising as to constitute a use for which consent is required . . . .") (emphasis added); see also Newcombe, 157 F.3d at 694 ("the connection between defendant's use of [plaintiff's] likeness and the commercial sponsorship . . . is a matter of fact"); Clark v. Am. Online Inc., 2000 WL 33535712, at *7 (C.D. Cal. Nov. 30, 2009) (same).

4. *California Business & Professional Code § 17200 et seq.*

Counterclaim Defendants also move for summary judgment on Drake's claim under California Business & Professional Code § 17200 et seq. That statutory scheme, known as the "California Unfair Competition Law" or "UCL," "prohibits unfair competition by means of

any unlawful, unfair or fraudulent business practice." <u>Birdsong v. Apple, Inc.</u>, 590 F.3d 955, 959 (9th Cir. 2009). Unfair competition is defined broadly as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200.

Counterclaim Defendants contend the UCL claim fails because there was no underlying violation of the Lanham Act or right to publicity, and therefore, no unlawful practice. "[A]ctions pursuant to § 17200 are substantially congruent to claims made under the Lanham Act." <u>Entrepreneur Media, Inc. v. Smith</u>, 279 F.3d 1135, 1153 (9th Cir. 2002) (internal citation, quotation marks, and alteration omitted); <u>see</u> <u>Acad. of Motion Picture Arts & Sci. v. Creative House Promotions, Inc.</u>, 944 F.2d 1446, 1457 (9th Cir. 1991) ("Under both [the Lanham Act and the UCL], the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks.") (internal citation and quotation marks omitted). When genuine issues of material fact preclude summary judgment on a Lanham Act claim, such relief is also inappropriate under the UCL. <u>See</u> <u>Entrepreneur Media</u>, 279 F.3d at 1153; <u>Meeker v. Meeker</u>, 2004 WL 2457793, at *9 (N.D. Cal. July 6, 2004). Because summary judgment is denied on Drake's other claim, this Court also denies summary judgment on the UCL claim.

CONCLUSION

While Drake may have filed counterclaims only because Counterclaim Defendants sued him, that does not necessarily mean that his claims are frivolous. For the foregoing reasons, the parties' dueling motions for summary judgment (ECF Nos. 184 and 189) and Counterclaim Defendants' motion for judgment on the pleadings (ECF No. 189) are denied. Counterclaim Defendants' motion to strike (ECF No. 199) is denied except for that portion seeking to strike the first sentence of paragraph five in the Tyler declaration. The Clerk of Court

is directed to terminate the motions pending at ECF Nos. 184, 189, and 199.  The parties are

directed to appear for a status conference to fix an expert discovery schedule on May 31, 2018 at

12:00 p.m.


Dated: May 15, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.